**UNITED STATES of America, Appellant,**

**v.**

**UNIT NO. 7 AND UNIT NO. 8 OF SHOP IN THE GROVE CONDOMINIUM, a** Condominium, according to the Declaration of Condominium as recorded in Official Records Book No. 10907, at Page 1432, of the Public Records of Dade County, Florida, and the amendments thereto as recorded in Official Records Book 10956, Page 304, Public Records of Dade County, Florida; Located on: Block 14, of Edwards Pent Subdivision, according to the Plat Book A, at Page 45 of the Public Records of Dade County, Florida, Locally known as 3310 Virginia Avenue, Miami, Florida, Appellees.

**UNITED STATES of America, Appellant,**

**v.**

**LOTS 1, 4 AND 5, BLOCK 3, BRUSH CREEK VILLAGE, together with all that portion of vacated Laney Lane abutting said Lots 4 and 5 in the County of Pitkin, State of Colorado, locally known as 0250 Medicine Bow Road, Aspen, Colorado, Appellees.**

**UNITED STATES of America, Appellant,**

**v.**

**LOT 1, OF SUNSET HAVEN, according to the Plat thereof recorded in Plat Book 64 at Page 110, of the Public Records of Dade County, Florida, locally known as 7335 S.W. 69th Court, Miami, Florida, 33143, Appellee.**

**UNITED STATES of America, Appellant,**

**v.**

**Stanley Carter KISER, Appellee.**

Nos. 87–2499 to 87–2502.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 11, 1988.

Decided Aug. 5, 1988.

---

Maury S. Epner, Washington, D.C., for appellant.

Joseph Beeler, Miami, Fla., for appellee.

Before LAY, Chief Judge, and McMILLIAN and ARNOLD, Circuit Judges.

ARNOLD, Circuit Judge.

This case presents a constitutional question concerning the government's seizure of property allegedly forfeitable under 21 U.S.C. §§ 853 and 881: May the government deprive a criminal defendant of the only assets with which he can pay a reasonable attorney's fee to the lawyer assisting in his defense solely on the basis of its allegation that the property is forfeitable as a criminal penalty and a magistrate's *ex parte* finding of probable cause to believe it is forfeitable? We hold that in these narrow circumstances the deprivation conflicts with the Fifth and Sixth Amendments, considered in combination.

I.

Stanley Carter Kiser has been indicted for, among other things, conducting a continuing criminal enterprise in violation of 21 U.S.C. § 848. The indictment alleges that some of Kiser's property, including two parcels of real estate in Miami, Florida, and one in Aspen, Colorado, should be forfeited to the United States under § 848 and 21 U.S.C. § 853. After the indictment was filed, the government also filed three civil-forfeiture actions under 21 U.S.C. § 881, one against each of these properties, and the properties were seized by the United States pursuant to seizure warrants. See 21 U.S.C. § 881(b). The warrants were issued by a magistrate, who made an *ex parte* finding of probable cause, in much the same way as findings are made to support the issuance of ordinary search warrants. Kiser then asked the District

Court[1] to release two of the properties from forfeiture and grant him permission to transfer them to his attorney in payment of fees and costs for legal representation in the prosecution. Chief Judge Vietor, who was presiding over the prosecution, transferred the motion to the Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa, before whom the civil-forfeiture cases were pending.

Before Judge Wolle could rule, Kiser petitioned for a writ of mandamus in this Court, asking us to order Chief Judge Vietor to stay the criminal prosecution pending determination of the motion to set aside the forfeiture. We ordered that the motion and the civil-forfeiture cases be transferred to Chief Judge Vietor, who

> promptly shall hold an adversary hearing on Petitioner's Motion.... Judge Vietor shall consider Petitioner's financial condition in order to determine whether Petitioner has assets not subject to forfeiture that could supply a reasonable fee to the counsel he has retained to assist in his defense in the pending criminal prosecution. For the protection of Petitioner's Fifth Amendment privilege of self-incrimination, any examination of Petitioner to determine his financial condition shall be conducted ex parte and in camera by Judge Vietor. If it is determined that Petitioner is without assets not subject to forfeiture from which he could pay the fee of his retained counsel, Judge Vietor shall determine the amount of a reasonable fee for Petitioner's retained counsel in the pending criminal prosecution and shall decide whether Petitioner's motion should be granted to that extent.

*Kiser v. Vietor*, No. 87–2287 (8th Cir. Sept. 30, 1987) (order) (Heaney, Arnold, and Bowman, JJ.), slip op. at 2.

Judge Vietor promptly conducted the hearing and found that Kiser has no assets not allegedly subject to forfeiture and that the proposed contract between Kiser and his retained counsel is for a reasonable sum.[2] The Court ruled further that the

---

1. The Hon. Harold D. Vietor, Chief Judge, United States District Court for the Southern District of Iowa.

2. The fee agreement calls for Kiser to transfer the real estate in Aspen to his lawyer in return for legal representation in the prosecution. There is no specific evidence in the record of the market value of this property, but two defense witnesses testified that $500,000 would be a reasonable fee in this case. The agreement also calls for transfer of Kiser's Miami house to his lawyer to secure payment of the lawyer's costs. Any sums realized from this property in excess of the amount of these costs will be returned to Kiser.

The District Court determined that this fee was reasonable by considering the standards contained in the Code of Professional Responsibility, DR 2–106. The government argues here, as it did below, that these standards should not govern the reasonableness inquiry, that the standards for fees under the Criminal Justice Act, 18 U.S.C. § 3006A, should govern instead. The District Court rejected this argument, and so do we. The Criminal Justice Act governs the fees paid by the United States to court-appointed lawyers who represent indigents. The inquiry here concerned the reasonableness of a fee agreement between a non-indigent and a privately retained lawyer; the Criminal Justice Act does not apply in this market.

We also reject the government's argument that the Court erred in not applying the reasonableness criteria used under 42 U.S.C. § 1988 to determine the amount of attorney's fees to award prevailing parties in actions under 42 U.S.C. § 1983. Not only were the criteria used by the Court entirely adequate to determine the reasonableness of the fee before us, but the § 1988 criteria are designed for use at the end of litigation and depend on factors, such as the number of hours actually worked, which cannot be known in advance of trial. Section 1988 cannot supply adequate standards in cases like the one before us.

The government also objects to the fact that the District Court heard some evidence on the reasonableness of the fee *in camera* and *ex parte*. Even if this was error (which we do not decide), the government has not persuaded us that it was prejudiced by this procedure. There was evidence in open court that a reasonable fee in this defense would be $500,000. The parties seem to have accepted this as a ballpark figure for the actual fee in this case. The government knew that Kiser contemplated transferring the two properties to pay the fee. The government could have put on evidence that the properties were worth substantially more or less than the ballpark figure, but it did not. We see no prejudice. And anyway, the *ex parte* procedure was reasonably necessary to assure that Kiser would not have to make incriminating admissions on the record that he owns the properties.

Sixth Amendment required that the motion be granted to the extent that the government sought forfeiture of property that was the subject of Kiser's contract with his defense lawyer. Accordingly, the Court released two of the properties, the Aspen realty and a house in Miami, from forfeiture and gave Kiser permission to transfer them to his lawyer. The motion was denied as to the other Miami property. The government appeals.

## II.

We first consider our jurisdiction in these appeals. We have jurisdiction in the underlying criminal action, No. 87–2502, under the collateral-order doctrine and 28 U.S.C. § 1291. See *United States v. Lewis*, 759 F.2d 1316, 1327 n. 4 (8th Cir.), *cert. denied*, 479 U.S. 994, 106 S.Ct. 406, 88 L.Ed.2d 357 (1985). The District Court certified its orders in the civil cases, Nos. 87–2499, 87–2500, and 87–2501, for immediate appeal under 28 U.S.C. § 1292(b). The United States never filed a petition in this Court for leave to appeal on the basis of these certifications, but we have jurisdiction in the civil cases anyway, both under the collateral-order doctrine and because the seizure orders have all the effects of a preliminary injunction. See 28 U.S.C. § 1292(a)(1); *United States v. Monsanto*, 836 F.2d 74, 77 (2d Cir.1987), *vacated en banc on other grounds*, 852 F.2d 1400 (2d Cir.1988) (per curiam). The appeal in No. 87–2499, however, must be dismissed as moot. (This is the case involving the other Miami property.) On April 11, 1988, the District Court dismissed the complaint in this case with prejudice, on motion of the plaintiff United States.

## III.

The procedural posture of this case is unlike those in the other appellate cases considering the validity of actions taken under these forfeiture statutes. Most have arisen after the government has obtained or been denied a restraining order under 21 U.S.C. § 853(e) directed at the defendant to prevent him from disposing of the allegedly forfeitable property. *E.g., United States v. Nichols*, 841 F.2d 1485 (10th Cir.1988); *United States v. Monsanto, supra; United States v. Thier*, 801 F.2d 1463 (5th Cir. 1986), *modified*, 809 F.2d 249 (5th Cir. 1987); *United States v. Crozier*, 777 F.2d 1376 (9th Cir.1985); *United States v. Lewis, supra*. Another came on appeal from a law firm's post-conviction third-party petition under 21 U.S.C. § 853(n) to determine the validity of its claim for fees in forfeited assets as against the government's forfeiture claim. *In re Caplin & Drysdale*, 837 F.2d 637 (4th Cir.1988) (en banc), *pet'n for cert. filed*, 56 U.S.L. Week 3739 (U.S. April 11, 1988) (No. 87–1729).

This action has not progressed so far. The government has lodged its indictment seeking forfeiture, filed its complaints against the three properties, and seized them pursuant to warrants. The seizure warrants issued on June 8, 1987, the day the indictment was unsealed. Kiser was not arrested until August 19, 1987. Trial was scheduled for November 9, 1987. Twelve days after his arrest, on August 31, 1987, Kiser filed this motion for release of two of the properties so he could pay his lawyer. The government resisted the motion, but it did not request a restraining order or adduce any additional proof that the properties were forfeitable. Thus, in light of the District Court's ruling that the attorney's fee is reasonable and that the seized assets are the only ones from which Kiser can pay the fee, which we have affirmed, the government is in the position of arguing that it can deprive Kiser of those assets solely because a grand jury has alleged that they are forfeitable and a magistrate has found probable cause to believe that they are.

Thus we are concerned with a particular application of the forfeiture statutes by the government, not with their facial constitutionality.

## IV.

The issue before us is not complex. Kiser has been indicted under federal criminal statutes. He wishes to defend himself; he has a lawyer who is willing to assist in his defense; and he has assets with which

he can pay a reasonable attorney's fee. Can the prosecution then, on the strength of its allegations and a determination of probable cause, made without giving Kiser a chance to be heard, constitutionally deprive Kiser of this property, thereby rendering him unable to pay his lawyer? The answer, in our view, is so elementary as to be almost obvious: No. Due process requires more than allegation and a determination of probable cause that property is the fruit of illegal drug trafficking before the government can place it out of reach of a criminal defendant who needs it to pay the lawyer conducting his defense.

■■■ We start from a fundamental premise: forfeiture of property as a criminal punishment of its owner cannot occur unless the owner is first convicted of a crime. This reasoning is a cornerstone of our system of justice, a basic tenet of the concept of due process. Kiser has been convicted of no crime; he has only been indicted. There is also a set of parallel civil proceedings, and, as the government points out, a finding of probable cause is normally sufficient to justify seizure in such proceedings, see *United States v. $8,850*, 461 U.S. 555, 562 n. 12, 103 S.Ct. 2005, 2011 n. 12, 76 L.Ed.2d 143 (1983), subject to the right of the property owner to show by rebuttal evidence that forfeiture is for some reason improper. But the present case involves more than a deprivation of property *simpliciter;* it involves a criminal defendant's loss of the only property he has with which to hire a lawyer of his own choice to defend him. So the case involves both the Due Process Clause of the Fifth Amendment and the Assistance of Counsel Clause of the Sixth Amendment. The question comes down to this: were the procedures followed here constitutionally sufficient to justify overriding Kiser's qualified Sixth Amendment right to hire his own lawyer with what would be, absent the government's claims, his own money? Both the right to own private property, a precious human right, and the right to

counsel in serious criminal cases, are involved.

In determining whether Kiser has received the process due under the Fifth Amendment, we must consider three factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). Measured against this standard, we conclude without hesitation that the government's actions under the forfeiture statutes in this case come up lacking. In this we adhere to the logic of *United States v. Lewis, supra*, where we held that an *ex parte* restraining order respecting allegedly forfeitable property, issued on the basis of the government's allegations, with no finding of a strong likelihood of success on the merits, violated due process. We also agree with the reasoning of two other circuits on that issue. *United States v. Harvey*, 814 F.2d 905, 930–31 (4th Cir. 1987); [3] *United States v. Crozier*, 777 F.2d 1376, 1383–84 (9th Cir.1985).

What process has Kiser received? The prosecution has investigated and concluded that these assets are the fruit of illegal drug trafficking. But no one could seriously consider this adequate process; it is mere accusation. What about the grand jury's determination of probable cause that these are tainted assets, which underlies the indictment? This is only a certification that the prosecutor's allegations are sufficient to demonstrate a fair probability that the assets are subject to forfeiture. And it is still only a step in the process of accusation; it is no reliable determination that the allegations are true, or even very likely

---

**3.** *Harvey* was one of three consolidated cases decided by a panel in one opinion. The panel held the government's pretrial deprivation of Harvey's assets on the basis of an *ex parte* restraining order violated the Fifth Amendment. The Fourth Circuit granted rehearing *en banc*

and reversed one of the other cases decided by the *Harvey* panel on Sixth Amendment grounds in *In re Caplin & Drysdale, supra*. But the *en banc* Court made clear that it left undisturbed the Fifth Amendment ruling with respect to Harvey. See 837 F.2d at 641.

true. The grand jury, of course, heard only one side of the case.

There has also been a magistrate's determination of probable cause in issuing the warrant to seize the assets. Though a magistrate's probable-cause determination is sufficient to permit seizure pursuant to warrant under the Fourth Amendment (and is due process for that seizure under the Fifth Amendment), it is not sufficient to enable the government to retain those assets, and thereby deprive the defendant of them, when it has been determined that they are the only assets from which he can pay his retained lawyer to conduct his defense. A magistrate's determination of probable cause, like a grand jury's, is only a finding that there is a fair probability of criminal activity. It contains a significant, and, in these circumstances, unacceptable risk of error. The government could easily and efficiently have reduced this margin of error by a large degree in this case: at the hearing on Kiser's motion, it could have shouldered the burden of proving a likelihood of success on the merits. See *United States v. Lewis*, 759 F.2d at 1324. A finding that a jury would likely find the assets to be proceeds of crime would inject a far higher degree of reliability into the proceedings than have the allegations and warrant before us. The ease and availability of this simple alternative, and the unreliability of the proceedings so far, cast grave doubt on the procedures the government has employed.

Kiser's private interest in regaining use of his property is much greater than his simple interest (important though it is) in using his own property as he sees fit. He has demonstrated that these particular assets are the only ones with which he can pay his lawyer for assisting in his defense to the government's serious criminal charges. He has a fundamental Sixth Amendment right to defend himself against these charges, and he unquestionably has a Sixth Amendment right (however qualified) to hire private counsel to aid in his defense. He also has a powerful interest in avoiding the criminal punishments the government may impose if he is found guilty—life in prison and forfeiture of all illegally acquired assets. These interests are among the highest in our constitutional hierarchy of values, and they call for a correspondingly high degree of procedural protection against error. *E.g., In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); see *United States v. Lewis*, 759 F.2d at 1324. It is beyond question that the government's deprivation of Kiser's property in this case strikes directly at his ability to pay his chosen lawyer, and reduces substantially the resources with which he can defend himself against these serious criminal charges.

The government argues that Kiser's Sixth Amendment right to counsel of choice is highly qualified and therefore does not weigh heavily in the due-process balance. It points to several cases in which this right has given way to the public's interest in the orderly administration of justice.[4] This argument misses the point. No court has found that this defendant's particular choice of counsel should be overridden in the interests of the administration of justice. And no one denies the general proposition that criminal defendants can use their own money to hire a willing lawyer.

The government responds that the property it seized belongs not to Kiser, but to the United States. It relies on 21 U.S.C. § 853(c), which provides that all "right, title, and interest" in forfeitable properties "vests in the United States upon commission of the act giving rise to the forfei-

---

**4.** *E.g., Wheat v. United States,* — U.S. —, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988) (no Sixth Amendment violation when court rejects client's offer to waive conflict of interest of counsel of choice and refuses to permit that counsel to represent client); *Morris v. Slappy*, 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983) (no Sixth Amendment violation when denial of continuance made it impossible for defendant's counsel of choice to represent him); *Urquhart v. Lockhart*, 726 F.2d 1316 (8th Cir.1984) (denial of continuance, which prevents retained counsel from replacing appointed counsel, does not violate Sixth Amendment); *United States v. Agosto*, 675 F.2d 965 (8th Cir.1982) (disqualification of retained counsel for conflict of interest does not violate Sixth Amendment); *United States v. Pilla*, 550 F.2d 1085 (8th Cir.), *cert. denied*, 432 U.S. 907, 97 S.Ct. 2954, 53 L.Ed.2d 1080 (1977) (preventing representation by disbarred counsel does not violate defendant's rights).

ture." Since Kiser violated 21 U.S.C. § 848 before the government lodged the indictment and civil complaints and seized the property, the argument runs, the property no longer belonged to Kiser and he had no constitutionally protected claim to it. This argument completely begs the question. It is true that this statute vests title in the government retroactively to the time of commission of the offense, but it must first be proved that an offense has been committed, for forfeiture under § 853 is part of the criminal penalty imposed for violating § 848. Only after this predicate has been established can the government take title. There has been no such determination in this case. There has not even been a finding of likelihood of success, made after compliance with the procedural safeguards of Fed. R. Civ. P. 65. See *United States v. Lewis, supra,* 759 F.2d at 1324–25.

The government makes two final, interrelated arguments with respect to the Sixth Amendment. It argues that any particular defendant's right to counsel of choice depends in part on his financial resources. If he wants to hire a particular lawyer to assist in his defense, but does not have the money to pay that lawyer's fee, there is no Sixth Amendment violation. Even if a defendant has no money with which to hire a private lawyer, the Sixth Amendment is not violated so long as he can have a court-appointed lawyer if he wants one. Thus, the logic goes, if the government's seizure of Kiser's assets renders him unable to pay his lawyer's fee, this " 'is simply of a piece with that resulting from other vagaries of life that may make it impossible to hire private counsel,' " Appellant's Br. at 25, quoting *United States v. Harvey,* 814 F.2d 905, 926 (4th Cir.1987), *rev'd in part sub nom. In re Caplin & Drysdale,* 837 F.2d 637 (4th Cir. 1988) (en banc), *supra,* and no significant Sixth Amendment problem would arise.

We cannot agree. First, the government's action here cannot be equated to other "vagaries of life" which may deplete a defendant's resources. It is one thing for a person to be unable to pay his or her lawyer because he or she lost money in bad investments, spent it on other ways, or never had it to begin with. It is an entirely

different matter for the government, which has lodged an indictment and thus put a person on the defensive in a serious criminal proceeding, purposefully to deprive the defendant of the very assets he needs to pay his lawyer. This is more like a preemptive strike than a vagary of life. Second, we reject the government's argument that even if its action should push Kiser into indigency, the Sixth Amendment would be fully vindicated by offering him appointed counsel. The government agrees that there is a Sixth Amendment right to counsel of choice for non-indigent criminal defendants that is independent of the right to appointed counsel for indigent defendants. But it claims that the non-indigent's right is so weak that the prosecution can, in the very proceeding in which the Sixth Amendment applies, deliberately make an indigent of a non-indigent. This is an extraordinarily impoverished view of the non-indigent's right. In essence it collapses the two distinct rights into one, the lesser. For if the non-indigent's Sixth Amendment right does not prevent this most fundamental intrusion, what force does it have?

The government also argues that the other side of the due-process balance, the importance of the government's interests at stake, is sufficient to make this deprivation constitutional. It contends that the forfeiture statutes serve legitimate non-punitive interests: the preservation of all of a defendant's disputed assets so that they will be available in the event they are held to be forfeitable, and the stripping of economic power of all narcotics traffickers. These interests, it argues, justify pretrial detention of Kiser's assets, just as the government's interests in assuring the defendant's presence at trial and the safety of the community justify the pretrial detention of some criminal defendants without bail. See *United States v. Salerno,* —— U.S. ——, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).

We reject this argument for two reasons. First, we find it inescapable that 21 U.S.C. § 853 serves predominantly punitive purposes. We have so ruled before. *United States v. Lewis,* 759 F.2d at 1324. Thus this statute is fundamentally different from the Bail Reform Act at issue in *Saler-*

*no.* See 107 S.Ct. at 2101. In addition, the statute upheld in *Salerno* contains elaborate procedures, such as an adversarial hearing and proof by clear and convincing evidence, which must be observed before the deprivation can take place. See 107 S.Ct. at 2099. No similar process has been provided to Kiser.

## V.

We hold that in the circumstances of this case the government violated the Fifth and Sixth Amendments by refusing to return Kiser's allegedly forfeitable property to him after he established that it was his only source of funds to pay the lawyer assisting in his defense. The judgment is affirmed.