**Stanley P. ARONSON, et al., Plaintiffs–Appellants,**

v.

**CITY OF AKRON, et al., Defendants–Appellees.**

No. 95–3184.

United States Court of Appeals, Sixth Circuit.

Argued May 20, 1996.

Decided June 23, 1997.

Rehearing and Suggestion for Rehearing En Banc Denied July 29, 1997.

Kenneth L. Gibson (argued and briefed), Weick & Weick, Cuyahoga Falls, OH, for Plaintiffs–Appellants.

Patricia A. Rubright, Director of Law, Akron, OH, for Defendants–Appellees, City of Akron, Darwin McGlumphy, Michael Woody, Detective McKeel, Officer Lugenbeal, Stan Smith, Charles Quinn, Noelle Tsevdos, and Hugh Sansbury.

Tracey Anne Wertman (argued and briefed), Summit County Prosecutor's Office, Donna J. Carr, Akron, OH, for Defendants–Appellees, Summit County, Ohio, and Lynn C. Slaby.

Andrew S. Bergman (argued and briefed), Office of the Attorney General of Ohio, Columbus, OH, for Amicus Curiae, State of Ohio.

Before: NELSON, RYAN, and SILER, Circuit Judges.

## OPINION

DAVID A. NELSON, Circuit Judge.

Ohio's "corrupt activity" law—sometimes called "Ohio RICO," after the federal statute on which it is patterned [1]—provides that a person convicted of violating Ohio Rev.Code § 2923.32 (a section that makes it a first degree felony to conduct the affairs of an enterprise through a pattern of corrupt activity) shall criminally forfeit his interest, if any, in property used in the course of or derived from the illegal conduct. See § 2923.32(B)(3). The law further provides that during the pendency of a criminal proceeding under Ohio RICO, the state, by filing an appropriate notice, may acquire a lien on property that is subject to forfeiture. See Ohio Rev.Code § 2923.36 (the "Corrupt Activity Lien Statute").

The case at bar is a civil rights action in which two central questions are presented: (1) whether the Corrupt Activity Lien Statute is unconstitutional on its face, and (2) whether the plaintiffs (one of whom was indicted for Ohio RICO violations, among other charges, but was not convicted on the RICO counts) suffered a violation of their constitutional rights by reason of the manner in which the statute was applied to them.

The district court entered summary judgment orders answering both questions in the negative. We agree that the statute is not unconstitutional on its face, and we shall affirm the order in which the district court so held. It seems to us that the record presents certain genuine issues of material fact with respect to the constitutionality of the statute's application in this instance, however, and we shall reverse, in part, the order in which the district court granted summary judgment on the plaintiffs' "as applied" claim.

I

The plaintiffs, Stanley P. Aronson and his wife, Kimberly L. Aronson, were apparently involved in conducting extensive bingo operations in Summit County, Ohio. In April of 1993 a Summit County grand jury handed up an indictment in which the Aronsons and others were charged with various felonies and misdemeanors connected with the bingo games. The felony counts against Mr. Aronson included one in which he was charged with having violated Ohio Rev.Code § 2921.32(A)(1) by engaging in a pattern of corrupt activity. Another count charged him with conspiracy to engage in a pattern of corrupt activity. The indictment contained a "forfeiture specification" alleging that certain property, including the Aronsons' residence at 2254 Anthony Drive, Bath Township, Ohio, either was used to commit the Ohio RICO offense or constituted proceeds of the offense.

---

1. See 18 U.S.C. §§ 1961 et seq., "Racketeer Influenced and Corrupt Organizations."

Soon after the Aronsons were indicted, a corrupt activity lien notice signed by defendant Lynn C. Slaby, Prosecuting Attorney of Summit County, was filed with the county recorder. The notice made reference to the Ohio RICO case against Mr. Aronson; gave a description of the property at 2254 Anthony Drive; and indicated that title was in the name of Mr. and Mrs. Aronson, "[t]he Defendant [Mr. Aronson] having a one-half (1/2) interest in this property."

The assistant prosecutor who made the filing, Philip P. Bogdanoff, subsequently attested that he mailed a copy of the recorded lien notice to Mr. Aronson by regular mail. He ought to have used certified mail, return receipt requested, as required by Ohio Rev. Code § 2923.36(D). Realizing his mistake, Mr. Bogdanoff filed a new lien notice the following month and attempted to furnish Mr. Aronson a copy by certified mail, return receipt requested, using the Anthony Drive address. (A notice of removal of the first lien was filed at about the same time.)

The Postal Service could not obtain a signature for receipt of the certified mail piece, and it was returned to the prosecutor as "unclaimed" after the Postal Service had left two notices at the residence. Mr. Bogdanoff then remailed a copy of the lien notice, again using certified mail. This too was returned as unclaimed after two unsuccessful attempts to obtain a signature on the return receipt. Still using certified mail, Mr. Bogdanoff finally furnished a copy of the lien notice to counsel of record for Mr. Aronson in the criminal proceeding.

In February of 1994 Mr. and Mrs. Aronson pleaded guilty to the misdemeanor counts of the indictment. The prosecutor dismissed all of the felony counts at this time, including the counts charging Mr. Aronson with Ohio RICO violations. The prosecutor is said to have stated at a news conference that because of a change in the testimony of a witness and discovery of accounting errors made by the investigators, his office felt that the felony charges could not be proved. Mr. Bogdanoff filed a notice of removal of the lien some three weeks after the dismissal of the RICO charges.

Meanwhile, shortly before the termination of the criminal proceedings, the Aronsons had brought a federal civil rights action against the city of Akron and various state and local law enforcement officials. The complaint alleged that the Aronsons had been subjected to false arrest, defamation, and illegal searches and seizures, among other things. Prosecuting Attorney Lynn Slaby, Summit County, the State of Ohio and others were joined as new parties defendant with the filing of an amended complaint in April of 1994.

The amended complaint alleged, among other things, that the corrupt activity lien filings had been made without probable cause, without prior notice, and without an opportunity to contest the lien in advance; that the filings constituted unreasonable seizures violative of the plaintiffs' rights under the Fourth and Fourteenth Amendments of the United States Constitution; that the plaintiffs had been deprived of property without due process of law in violation of the Fifth and Fourteenth Amendments; and that Ohio Rev.Code § 2923.36 should be declared unconstitutional on its face. The amended complaint also set forth state law claims for defamation, abuse of process, and intentional infliction of emotional distress.

The amended complaint alleged that the plaintiffs had suffered damages as a result of the lien filings, but the pleading did not specify the nature of the damages. In an affidavit filed some months later, however, Mr. Aronson attested that the forfeiture specification caused him to be in violation of the terms of a mortgage on the Anthony Drive property;[2] that because of the forfei-

---

**2.** Attached to the affidavit were copies of a 1987 mortgage and a 1992 credit line mortgage. Neither instrument appears to substantiate the claim that the forfeiture specification caused a "violation," strictly speaking, but the credit line mortgage does provide that if a lien subordinate to the mortgage should be placed on the property without the bank's written consent, "the Bank may, at its option, declare all the sums secured by this mortgage to be immediately due and payable." The record does not disclose whether the Aronsons were using any part of their credit line during the time when the indictment was pending, and there is no indication that the bank accelerated the due date of any loan that may have been outstanding under the line of credit.

ture specification, he was delayed in refinancing his home; and that although he was able to refinance at a 7% interest rate after the indictment was dismissed and the lien released, interest rates had been as low as 6 1/8% at one point during the pendency of the indictment. Unlike the parties in several of the cases on which the plaintiffs rely (see, e.g., *United States v. Monsanto*, 924 F.2d 1186 (2d Cir.) (*en banc*), *cert. denied*, 502 U.S. 943, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991), and *United States v. Unit No. 7 and Unit No. 8*, 853 F.2d 1445 (8th Cir.1988)), Mr. Aronson has never contended that the lien prevented him from obtaining representation by a lawyer of his own choosing.

Mr. Aronson's affidavit also attested that the Anthony Drive property had been purchased under a land contract in 1982 and had been conveyed to Mr. Aronson by a warranty deed recorded in 1987, well before the time frame (January of 1990 through February of 1992) specified in the indictment for the alleged pattern of corrupt activity. The affidavit further attested that the property did not in any way constitute the proceeds of a pattern of corrupt activity and had not been used to commit a pattern of corrupt activity.

In due course the Aronsons moved for partial summary judgment, asking the district court to strike down specified portions of Ohio Rev.Code § 2923.36 as unconstitutional on their face. Concluding that the statute is not unconstitutional on its face, the court denied the motion.

Defendants Lynn Slaby and Summit County then moved for partial summary judgment with respect to the "as applied" challenge to the statute. The district court granted the motion, ruling in favor of the remaining defendants[3] on all of the federal claims and dismissing the pendent state law claims without prejudice. The plaintiffs have perfected a timely appeal.

---

3. The State of Ohio and a number of other defendants had previously been dismissed by agreement.

4. Where a RICO proceeding has been commenced by the filing of an information or a juvenile court complaint, the allegation of the extent of the property subject to forfeiture is to be made in the information or complaint. Mr.

## II

The Aronsons contend that Ohio's Corrupt Activity Lien Statute is unconstitutional on its face because (1) it authorizes the seizure of property interests without probable cause, thereby violating the Fourth Amendment prohibition (made applicable to Ohio by the Fourteenth Amendment) against unreasonable seizures; (2) it allows liens to be filed without prior notice and an opportunity to be heard in court, thereby violating the due process provisions of the Fifth and Fourteenth Amendments; and (3) it violates the constitutional rights of innocent third parties. To evaluate these contentions properly, it will be necessary to describe some of the pertinent features of the statutory scheme in greater detail than we have done so far.

### A

Once a defendant has been convicted of an Ohio RICO violation, Ohio Rev.Code § 2923.32(B)(3) mandates criminal forfeiture of the defendant's interest in any property used in or derived from the violation. Except for property not reasonably foreseen to be subject to forfeiture at the time of the indictment, however, forfeiture is not to be ordered unless the indictment itself alleges the extent of the property subject to forfeiture. See § 2923.32(B)(4)(a).[4] A special verdict is to be rendered as to the extent of any property subject to forfeiture, and a judgment of forfeiture is to be entered when the verdict is returned. See § 2923.32(B)(4)(b). As used in this section, the statutory phrase "subject to forfeiture" can only refer to property the extent of which is alleged in the indictment (§ 2923.32(B)(4)(a)(i)) or property that at the time of the indictment was not reasonably foreseen ·to be forfeitable (§ 2923.32(B)(4)(a)(ii)).[5]

---

Aronson having been indicted, we refer here only to indictments.

5. As to property that at the time of the indictment was not reasonably foreseen to be forfeitable, the prosecuting attorney must give prompt notice to the defendant when the property is discovered to be forfeitable; otherwise, forfeiture may not be ordered. *Id.*

During the pendency of the RICO proceeding, § 2923.36(A) provides, the state may file a corrupt activity lien notice with the county recorder of any county where there may be property subject to forfeiture—*i.e.*, property which, if reasonably foreseen to be forfeitable, has been identified in a forfeiture specification of the indictment. A corrupt activity lien notice is to apply only to one person; "[a] separate corrupt activity lien notice is required to be filed for any other person." Section 2923.36(C).

The notice constitutes a lien in favor of the state from the date of filing. See § 2923.36(E). If a pending sale of the property is prevented by the filing of the notice, the court must promptly enter an order terminating the notice. See § 2923.36(Q)(4). The sale proceeds are to be deposited with the clerk of the court, however, subject to the further order of the court. *Id.*

Within seven days after the filing of a lien notice, § 2923.36(D) provides, the prosecuting attorney is to furnish the person named therein a copy of the recorded notice. It is to be sent to the person's last known business or residential address by certified mail, return receipt requested. *Id.*

After receipt of a copy of the lien notice, the person named therein may petition the court either to lift the lien upon the posting of a security bond "or to modify the lien as the interests of justice may require." Section 2923.36(D). If no civil RICO proceeding has been brought by the prosecuting attorney (and none had been in the case at bar), the person named in the lien notice may also bring an action seeking termination of the notice or release of the property. See § 2923.36(Q)(3). If such an action is brought by the person named in the notice, the court must promptly set a hearing date—and the hearing date is to be no more than 10 days after the filing of the action. *Id.* The court must lift the lien if the person bringing the action shows by a preponderance of the evidence that the notice does not apply to him

or that his property is not subject to forfeiture. *Id.*[6]

If the prosecuting attorney has not brought a civil RICO proceeding, and if the person named in the lien notice is acquitted in the criminal RICO proceeding, the acquittal terminates the lien notice. See § 2923.36(Q)(1). Dismissal of the criminal RICO proceeding likewise terminates the notice. "In such a case, the filing of the notice has no effect." *Id.*

### B

Legislative enactments carry a strong presumption of constitutionality. *Rostker v. Goldberg,* 453 U.S. 57, 64, 101 S.Ct. 2646, 2651, 69 L.Ed.2d 478 (1981). Rebutting the presumption is seldom easy, and it is far from easy here.

■ To succeed on their claim that Ohio's statutory scheme is unconstitutional on its face, the Aronsons must establish that no set of circumstances exists under which the scheme would be valid. See *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987); *Dean v. McWherter,* 70 F.3d 43, 45 (6th Cir.1995). A "facial" challenge to a legislative enactment is "the most difficult challenge to mount successfully...." *Salerno, id.* The Aronsons have not surmounted the difficulty; they have not persuaded us that there can be no set of circumstances in which the Corrupt Activity Lien Statute would be valid.

### 1

■ With regard to the plaintiffs' argument that on its face the statute authorizes the seizure of property interests without probable cause, it is hornbook law that a grand jury must find probable cause before it can return an indictment. See 41 Am.Jur.2d *Indictments and Informations* § 27 (1995). The forfeiture specification in the indictment against Mr. Aronson thus reflects a finding by the grand jury of probable cause to believe that Mr. Aronson's interest in the An-

---

**6.** Other persons claiming an interest in property that an indictment alleges is subject to forfeiture may not sue the state concerning the validity of their alleged interests. See Ohio Rev.Code

§ 2923.32(F). Once a judgment of forfeiture is entered, however, such persons may petition the court for a hearing to determine the validity of their claims. See § 2923.32(E)(2).

thony Drive property would be forfeitable upon his conviction. And without the specification in the indictment, the government would have had no authority to file the corrupt activity lien notice in the first place; under Ohio Rev.Code § 2923.36(A), to repeat, such notices may be filed only where there is "property subject to forfeiture"—and property known to be subject to forfeiture is supposed to be specified in the indictment.

The appellate brief filed on behalf of the prosecutor and the county seems to reflect an understanding that it was a matter of discretion whether a forfeiture specification would be included in Mr. Aronson's indictment. This understanding is manifestly incorrect in our view (and in the view of the State of Ohio), at least where the government wants to acquire a corrupt activity lien *pendente lite*. As we have already indicated, if the existence of forfeitable property is reasonably foreseen at the time of the indictment, the extent of the property subject to forfeiture is supposed to be alleged in the indictment. See Ohio Rev.Code § 2923.32(B)(4). As the State of Ohio said in the amicus brief it filed on the facial challenge, "[t]he property which the state believes to be subject to forfeiture *must* be listed in the indictment or information charging the offense." (Emphasis supplied.)

■ Failure to include a forfeiture specification in the indictment when forfeitability is reasonably foreseen would frustrate the mandate of Ohio Rev.Code § 2923.32(B)(4). The filing of a corrupt activity lien notice is discretionary, to be sure, but inclusion of a forfeiture specification in the indictment is mandatory where forfeitable property is foreseen at the time of the indictment and where the government wants to acquire a prejudgment lien on such property and obtain a judgment of forfeiture at the end of the trial.

The "seizure" alleged in the Aronsons' amended complaint is said to have occurred when the corrupt activity lien notice was filed. On its face, as we have seen, the statutory scheme contemplates that such a notice will not be filed unless the grand jury has found probable cause to include a forfeiture specification in the indictment. It is true that the grand jury's determination of probable cause "is only a certification that the prosecutor's allegations are sufficient to demonstrate a fair probability that the assets are subject to forfeiture." *Unit No. 7 and Unit No. 8,* 853 F.2d at 1449. But we take it that under the Ohio statute, as under federal law (see *Monsanto,* 924 F.2d at 1200), grand jury determinations of probable cause may be reconsidered by the court if the defendant seeks judicial relief following the indictment and prior to trial. Against this background we are not prepared to say that the filing of a corrupt activity lien notice pursuant to a grand jury's forfeiture specification necessarily constitutes an unreasonable seizure.

2

■ We turn next to the question whether, on its face, the Corrupt Activity Lien Statute violates the constitutional prohibition against depriving people of property without due process of law. It is uncontested here that, as indicated in *Connecticut v. Doehr,* 501 U.S. 1, 12, 111 S.Ct. 2105, 2113, 115 L.Ed.2d 1 (1991), state procedures for creating and enforcing liens "are subject to the strictures of due process." (Citations omitted.) Accordingly—and bearing in mind that we are dealing here with a situation where the government files a lien notice on its own initiative, rather than authorizing a private party to do so—we need to determine whether the process that is due extends to according the landowner a hearing prior to the filing of a lien notice. The Supreme Court left open a similar issue in the *Monsanto* litigation, see *United States v. Monsanto,* 491 U.S. 600, 615, n. 10, 109 S.Ct. 2657, 2666, n. 10, 105 L.Ed.2d 512 (1989), but the Second Circuit concluded on remand that "because of the exigent circumstances presented, notice and a hearing need not occur before an ex parte restraining order is entered...." *Monsanto,* 924 F.2d at 1193.

In analyzing the due process issue, *Doehr* suggests (501 U.S. at 10, 111 S.Ct. at 2112), we must use "the now familiar threefold inquiry" set forth in *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). The *Mathews* inquiry involves consideration of the following factors:

"First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335, 96 S.Ct. at 903.

As to the first *Mathews* factor, the private interest affected, it bears emphasis that the lien did not work a permanent forfeiture of the Aronson residence. The Supreme Court "consistently has held that some form of hearing is required before an individual is finally deprived of a property interest," *id.* at 333, 96 S.Ct. at 902, but under the Ohio RICO statute a judgment of forfeiture can only be entered after a full blown criminal trial. Ohio's forfeiture procedures themselves are not being challenged in the case at bar.

Neither did the filing of the lien constitute a "seizure" of property in the ordinary sense of that term, as opposed to the legal sense. The statute does not authorize an attachment, or garnishment, or sequestration, or arrest of any property interest. Like the respondent in the *Monsanto* litigation, Mr. Aronson "was not ousted from his property, but merely restrained from disposing of it"— an intrusion "less severe" than some which the Supreme Court has permitted. 491 U.S. at 615, 109 S.Ct. at 2666. Unlike the seizure of residential property effected by the government in *United States v. James Daniel Good Real Property,* 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993), the filing of a lien notice under the Ohio statute gives the state no right to evict occupants, or impose conditions on occupancy, or charge or collect rent. *Cf. Good,* 510 U.S. at 49, 114 S.Ct. at 498–99.

In its weighing of the *Mathews* factors the *Good* Court recognized that a conventional seizure constitutes a far more serious impairment of the landowner's property interest than do "less restrictive measures" such as the filing of a *lis pendens* notice under state law. *Id.* at 62, 114 S.Ct. at 505. *Cf. United*

*States v. Real Property Known and Numbered as 429 South Main Street, New Lexington, Ohio,* 52 F.3d 1416, 1420 (6th Cir. 1995):

"[T]he *Good* Court indicated that the exercise of authority, short of seizure, would *not* trigger the notice and hearing requirement. In particular, the government could file a *lis pendens* ... without a predeprivation hearing, under the *Mathews* evaluation set forth in *Good.*" (Emphasis supplied.)

See also *United States v. 408 Peyton Rd., S.W.,* 112 F.3d 1106, 1110 n. 5 (11th Cir.1997) (*Good* "specifically endorsed [a *lis pendens* ] as a valid means of safeguarding the Government's legitimate interests").

The filing of a lien notice has the same practical effect as the filing of a *lis pendens* notice. As long as a forfeiture action is pending, under the *lis pendens* doctrine, third parties having notice thereof cannot acquire an interest in the subject of the action superior to the claim of the party prosecuting the action. *Cf.* Ohio Rev.Code § 2703.26. So it is with a corrupt activity lien; such a lien "is superior and prior to the interest of any other person ... if the interest is acquired subsequent to the filing of the notice." Ohio Rev.Code § 2923.36(E). A *lis pendens* does not affect the use to which the property may be put during the pendency of the action, and neither does a corrupt activity lien. See Ohio Rev.Code § 2923.36(N):

"The filing of a corrupt activity lien notice does not affect the use to which personal or real property, or a beneficial interest in it, that is owned by the person named in the notice may be put or the right of the person to receive any proceeds resulting from the use and ownership, but not the sale, of the property, until a judgment of forfeiture is entered."

In addition to impairing the owner's ability to sell his interest in the property, a *lis pendens* or corrupt activity lien may taint the owner's credit rating, may place an existing mortgage in technical default, may make it impossible to obtain a second mortgage, and may have other adverse consequences. But under *Good's* evaluation of the *Mathews* factors, as our court recognized in *429 South*

*Main Street,* this "would not trigger the notice and hearing requirement." *429 South Main Street,* 52 F.3d at 1421. The mere filing of an ordinary lien or *lis pendens* notice simply does not represent the sort of "grievous loss"—see *Mathews,* 424 U.S. at 333, 96 S.Ct. at 901–02—that necessitates prior notice and an opportunity to be heard.[7]

In light of *Good* and *429 South Main Street,* we see nothing in the second and third *Mathews* factors that would alter our conclusion. Given the role played by the grand jury, and given the post-filing remedies available under the Corrupt Activity Lien Statute, Ohio's procedures cannot be said to carry excessive risk of an erroneous deprivation of property interests. Additional procedural safeguards would have no more value here than they would in the *lis pendens* situation discussed by the Court in *Good.* And the state obviously has a strong interest in forestalling dissipation of assets that are subject to forfeiture by reason of their connection with RICO offenses.

Ohio's interest is far stronger than the interest Connecticut had in the *Doehr* case; there the state made prejudgment attachment available to private civil litigants, whereas here the state claimed lien rights arising from criminal proceedings prosecuted by the state itself. *Cf. Fuentes v. Shevin,* 407 U.S. 67, 91, 92 S.Ct. 1983, 1999–2000, 32 L.Ed.2d 556 (1972), where the Court noted that even outright seizure may sometimes pass constitutional muster without an opportunity for a prior hearing where the person initiating the seizure is "a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance."

### 3

■ The plaintiffs' argument with respect to innocent third parties is likewise unavailing. It is important to understand that Mrs. Aronson's interest in the Anthony Drive property was not subject to the lien. On its face, the lien related only to the one-half interest held by Stanley P. Aronson, the defendant in the RICO case. Nothing more was permitted under the statute. To the extent known, at least, the lien notice must identify the property interest of the person named in the notice, see Ohio Rev.Code § 2923.36(B)(6), and the notice cannot apply to more than one person. See § 2923.36(C).

In seeking forfeiture, the state proceeds against the individual property owner, not against the property in which he has an interest; the proceedings are *in personam,* not *in rem. State v. Thrower,* 81 Ohio App.3d 15, 16, 610 N.E.2d 433, 434 (Summit 1991). The state never proceeded against Kimberly Aronson under RICO, so her property interest in the residence was neither forfeitable nor lienable. The corrupt activity lien law was not designed to create lien rights in property interests not subject to forfeiture.

Citing Ohio Rev.Code § 2923.36(Q)(4), Mrs. Aronson argues that if a sale of the Anthony Drive residence had been pending when the lien notice was filed, the entire proceeds of the sale would have had to be deposited with the clerk of the court. We do not so interpret the law. The section cited is not a model of clarity, but given the structure of the statute as a whole, and recognizing our obligation to interpret statutes in such a way as to avoid constitutional infirmities where possible, we think that only half of the sales proceeds would have been tied up in the hypothetical situation posited by Mrs. Aronson; the proceeds of the sale of Stanley Aronson's interest would have had to be paid into court, but not the proceeds of the sale of Kimberly Aronson's interest. On its face, in our view, the statute does not violate the constitutional rights of innocent third parties.

---

**7.** We acknowledge a certain degree of tension between our conclusion on this point and the decision in *United States v. Crozier,* 777 F.2d 1376, 1383–84 (9th Cir.1985), where the Ninth Circuit held unconstitutional on its face a statutory provision authorizing *ex parte* orders restraining alienation of property allegedly forfeitable under the Comprehensive Crime Control Act. In *Crozier,* however, the defendant could not challenge the restraining order prior to conviction. *Id.* at 1383. Mr. Aronson, by contrast, could have sought pretrial relief under Ohio Rev.Code § 2923.36(D) or § 2923.36(Q)(3).

## III

The claim that in this particular instance the Corrupt Activity Lien Statute was applied unconstitutionally rests primarily on assertions that Prosecuting Attorney Slaby and other Summit County officials knew when they caused the filing of the lien notices that there was no probable cause to believe either that the Anthony Drive residence had been acquired with funds generated by activities illegal under RICO or that the residence had been used in the course of such activities. In support of this claim the plaintiffs point to deposition testimony in which the prosecuting attorney revealed a somewhat surprising lack of familiarity with the factual predicate for the forfeiture specification in the indictment; to evidence that the residence had been purchased long before the start of the alleged RICO violations; to the absence of any allegation in the indictment that the alleged RICO violations were connected with the making of improvements to the property;[8] and to affidavits indicating that there was no basis for forfeiture.

Thus far, at least, the prosecutor has presented no claim of prosecutorial immunity or any other kind of immunity from suit.[9] His and the county's principal line of defense, rather, has been that the grand jury's indictment and certain grand jury testimony now made public both suffice to demonstrate as a matter of law that the lien filings were justified. In this connection our attention is invited to *Rodriguez v. Ritchey,* 556 F.2d 1185, 1191 (5th Cir.1977), *cert. denied,* 434 U.S. 1047, 98 S.Ct. 894, 54 L.Ed.2d 799 (1978), where the old Court of Appeals for the Fifth Circuit cited substantial authority in support of the proposition that "it has long been settled that an indictment by a properly constituted grand jury conclusively determines the existence of probable cause...."

The district court appears to have viewed the forfeiture specification of the indictment as conclusive of probable cause. "Nothing in the law," the district court wrote, "requires Lynn Slaby to second-guess the Grand Jury or engage in an independent probable cause investigation despite the Grand Jury's probable cause finding."

It was the prosecutor's office that presented the case on which the indictment was based, however. If we set aside the question of immunity, as we must at this point, we do not read the contemporary caselaw as suggesting that a prosecutor is free to encumber a citizen's property interests on the strength of a forfeiture specification procured with knowledge that there was no factual basis for it. As the new Fifth Circuit observed more than a decade after *Rodriguez,* "simply obtaining an indictment is not enough to insulate state actors from an action for malicious prosecution under § 1983." *Hand v. Gary,* 838 F.2d 1420, 1426 (5th Cir.1988).

In *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), the Supreme Court rejected an argument that a police officer who had been sued for making an allegedly unconstitutional arrest should be conclusively deemed entitled to immunity as long as an independent magistrate had issued a warrant for the arrest. The *Malley* decision rests on an acknowledgment that sometimes "a magistrate ... will fail to perform as a magistrate should." *Id.* at 345–46, 106 S.Ct. at 1098. We have no reason to suppose that the Supreme Court would ascribe a lesser degree of fallibility to a lay grand jury conducting secret proceedings under the guidance of a prosecutor who knows, *ex hypothesi,* that he is asking the grand jury to take an action not warranted by the facts. See *Jones v. City of Chicago,* 856 F.2d 985, 994 (7th Cir.1988) ("a grand jury's decision to indict ... will [not] shield a police officer who deliberately supplied misleading information that influenced the decision"); *Edmond v. United States Postal Service General Coun-*

---

8. Count Six of the indictment charged Mr. Aronson with grand theft, and an explanation of this count in the state's bill of particulars alleged that Mr. Aronson had directed maintenance workers from his bingo operations to make improvements to the Anthony Drive property, with payment being made from bingo proceeds. Count Six, however, was not among the counts tied to the alleged RICO violation.

9. We are told that the prosecutor asked for a delay in discovery on the immunity issue and reserved this question for later briefing if necessary.

*sel,* 949 F.2d 415 (D.C.Cir.1991) (grand jury indictment based on defendants' perjurious testimony does not conclusively determine the existence of probable cause to effect plaintiff's arrest).

■ Under Ohio law, similarly, an indictment only constitutes *prima facie* evidence of probable cause; the indictment is not conclusive. See *Adamson v. The May Co.,* 8 Ohio App.3d 266, 456 N.E.2d 1212 (Cuyahoga 1982); *Epling v. Pacific Intermountain Exp. Co.,* 55 Ohio App.2d 59, 379 N.E.2d 239 (Medina 1977); *Friedman v. United States,* 927 F.2d 259, 262 (6th Cir.1991) (citing Ohio caselaw).

As to the grand jury testimony on which the defendants rely to show probable cause— testimony subsequently recanted by the witness who gave it—at least some of the testimony clearly fails to show forfeitability under the criteria set forth in the Ohio statute. See, *e.g.,* n. 8, *supra.* To the extent that the testimony may have supported the forfeiture specification of the indictment, there appears to be an issue of fact as to whether the prosecutor's office knew or should have known that the testimony was tainted.

If Mr. Aronson should be able to rebut the presumption of probable cause, sustaining his burden of proving, notwithstanding the indictment, that the prosecutor's office knew there was no probable cause to believe that Mr. Aronson's interest in the Anthony Drive residence was subject to forfeiture, a question of fact would be presented as to whether Mr. Aronson sustained any compensable damage as a result of the lien. Often, of course, the pendency of a lien for a few months will have no appreciable effect on the landowner's purse. In this case, however, there appear to be genuine issues as to whether Mr. Aronson was delayed in refinancing his property at a rate more favorable than the one initially in effect and whether the rate he ultimately obtained would have been lower but for the pendency of the lien.

■ Finally, Mr. Aronson submits that there are issues of material fact as to whether he received timely notice of the lien. We disagree. Mr. Aronson may or may not have deliberately refrained from responding to the four mail notices left at his residence by the Postal Service after a copy of the lien notice had allegedly been sent him by regular mail, but it is uncontested that Mr. Aronson's lawyer received a copy of the notice. On the record before us—and regardless of whether the lien was valid as a matter of statutory law—we can see no constitutional infirmity in the decision to make service through Mr. Aronson's counsel of record.

IV

The order denying the plaintiffs' motion for summary judgment on the "facial" challenge is **AFFIRMED**; the order granting the defendants' motion for summary judgment on the "as applied" challenge is **AFFIRMED** in part and **REVERSED** in part; and the case is **REMANDED** to the district court for further proceedings not inconsistent with this opinion.