**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Clarence Jay CROZIER, Manuel Isadore Pine, Alan Terry Stein, and Florence Margaret Wolke, Defendants-Appellees.**

Nos. 81–1345, 81–1355 and 81–1484.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 1, 1982.

Decided Dec. 5, 1985.

Billie A. Rosen, Asst. U.S. Atty., Phoenix, Ariz., for defendants-appellees.

Richard E. Hove, Du Bois & Hove, Oakland, Cal., Sandra Slaton, Asst. Fed. Public Defender, Phoenix, Ariz., for plaintiff-appellant.

Before GOODWIN and TANG, Circuit Judges, and SOLOMON,* District Judge.

SOLOMON, Judge:

This case is before the court on a remand from the Supreme Court of the United States.

* The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

On an interlocutory appeal, we affirmed the district court's orders suppressing evidence seized from the defendants' residences and we vacated its order restraining defendants Clarence Crozier and Florence Wolke from disposing of much of their real and personal property.

The Supreme Court vacated our decision and remanded the case to us for reconsideration in light of three recent cases: *Segura v. United States,* — U.S. —, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984); *United States v. Leon,* — U.S. —, 104 S.Ct. 3405, 82 L.Ed.2d 677, *reh'g denied,* — U.S. —, 105 S.Ct. 52, 82 L.Ed.2d 942 (1984); and *United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in U.S. Currency,* 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983). *United States v. Crozier,* — U.S. —, 104 S.Ct. 3575, 82 L.Ed.2d 873 (1984).

### Facts

On April 9, 1980, drug enforcement agents believing that Crozier and Stein were manufacturing narcotics, arrested them. At the time, they were traveling in separate automobiles.

Agents then proceeded to Crozier's residence, which he shares with defendant Wolke. The agents entered the residence without a warrant. They looked in every room to make sure that no one else was there, and they remained there for six hours while other agents obtained a search warrant.

The search warrant authorized the seizure of "Amphetamine, precursor chemicals including Methylamine, P–2–P, Ether, and Alcohol, and laboratory apparatus, notes, formulas, as well as any indicia of ownership and control of the premises."

In his statement to the magistrate who issued the warrant, Agent Murphy traced his investigation of Crozier and other defendants from 1978 to the date of Crozier's arrest. Murphy stated that confidential informants saw Crozier with chemicals, glassware and other apparatus used to manufacture amphetamine and that Crozier talked to these informants about his am-

phetamine business. Agents were told of Crozier's suspected laboratory site in Yuma, Arizona, and on April 8, 1980, they saw Crozier and Stein at that site.

Police observed Crozier's laboratory apparatus and chemicals and knew that Crozier had repeated contact with companies that supply the types of chemicals and laboratory apparatus used to manufacture amphetamine.

On April 9, 1980, agents followed Crozier and Stein to a garbage dump and then searched through the trash they left. They found containers of ether, ammonia and other chemicals, an empty dispenser of "PH" papers, and papers bearing the names of Clarence Crozier and Florence Wolke. The agents then executed a search warrant for the Yuma laboratory site and found laboratory equipment and amphetamine.

Based on his nine years of experience with the Drug Enforcement Administration, Murphy concluded that Crozier and other defendants were engaged in activities common to people who manufacture amphetamine. The activities included choosing a secluded site for a laboratory, using chemicals, pans, flasks, beakers and other items which are needed to produce amphetamine. They also carried large amounts of cash which had no apparent source other than the drug operation, and they traveled to purchase chemicals and to meet with co-conspirators.

In their search of the Crozier residence, made pursuant to the warrant, agents seized many irrelevant papers, such as personal letters and greeting cards, medical insurance and social security correspondence, and bank statements dating back to 1973.

After they searched the Crozier residence, they proceeded to the Stein residence. Crozier's son and daughter and a friend, none of them defendants, were on the Stein premises. The agents entered the residence without a warrant and conducted a sweep to make sure that no other persons were present.

There is conflicting testimony on whether the agents entered the Stein residence with the permission of the occupants. It is undisputed that they remained on the premises for more than six hours and until a search warrant issued.

The warrant for the Stein residence was based on the statement of probable cause which supported the Crozier warrant. The warrant did not describe any particular property to be seized; it merely authorized the seizure of "Material evidence of violation 21 USC 841, 846, (Manufacture and Possession with intent to distribute Amphetamine and Conspiracy)." The affidavit was more detailed, but the executing officer did not have the affidavit, only the warrant.

The agents seized laboratory equipment and chemicals, and they also seized Stein's tax returns and records of real estate transactions.

During the search of the Stein residence, agents photographed gold coins and jewelry, and they examined records of financial transactions. Based on Murphy's statement that these items are the fruits of crime, agents obtained a warrant to seize them, and on April 11, 1980, they seized these items pursuant to the warrant.

Crozier, Stein, Pine, Wolke and seven other defendants were indicted for the manufacture and possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). They were also indicted for conspiracy and tax evasion, in violation of 26 U.S.C. § 7201. Crozier alone was indicted for engaging in a continuing criminal enterprise, 21 U.S.C. § 848, the penalties of which include forfeiture of all profits obtained through the enterprise.

The district court granted the government's *ex parte* motion to restrain the transfer or encumbrance of almost all of the real and personal property belonging to Crozier and some property belonging to Wolke, who lives with Crozier.

The district court suppressed the evidence seized from the Crozier and Stein residences because both warrants were overbroad and because no exigent circumstances existed to justify the warrantless entry of the Crozier residence. The district court did not rule on the validity of the April 10, 1980 search of Wolke's automobile, but the government concedes that it was the fruit of the search of the Stein residence.

We affirmed the district court's finding that there were no exigent circumstances to justify the warrantless entry of the Crozier residence. We found that there was even less justification for the warrantless entry of the Stein residence because none of the defendants were there when the agents arrived. We affirmed the suppression of evidence against Stein and Crozier but remanded to the district court the issue of whether other defendants had a legitimate expectation of privacy in the Stein and Crozier homes which would justify the suppression of the evidence against them. *United States v. Crozier,* 674 F.2d 1293 (9th Cir.1982).

We also vacated the restraining order and directed the district court to hold a hearing to determine whether the restraining order was justified.

### Discussion

#### I. *The Search Warrants*

In *Segura v. United States,* —— U.S. ——, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), the Supreme Court considered facts which are similar to those here. The police arrested one defendant and took him to his apartment where they entered the apartment without permission, saw other defendants, and conducted a limited security check. There was drug paraphernalia in plain view. Two agents stayed in the apartment until a warrant was secured nineteen hours later. In a search pursuant to the warrant, agents discovered and seized cocaine and records of drug sales.

The Court held that the seizure was reasonable under the Fourth Amendment because it was based upon probable cause and because the officers secured the dwelling to prevent the destruction of evidence.

The officers merely secured the premises and did not exploit their presence. The Court emphasized that "an entry in the absence of exigent circumstances is illegal." *Segura,* 104 S.Ct. at 3390.

The Court also held that even if the seizure was illegal, evidence seized from the dwelling may be admissible if the government had an independent source for the warrant under which the evidence was seized. *Id.* at 3391.

■ We review the issue of probable cause de novo as we apply *Segura* to the facts of this case. *United States v. McConney,* 728 F.2d 1195, 1203 (9th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

### A. The Crozier Warrant

In our earlier opinion, we held that the entry into the Crozier residence was illegal because there were no exigent circumstances. We ended our inquiry there. Under *Segura,* even if the initial entry is illegal, the evidence seized may be admissible if there was an independent source for the warrant. *Segura,* 104 S.Ct. at 3391. We must determine whether the agents had an independent source for the information on which the magistrate issued the warrant and whether the warrant was supported by probable cause.

■ We must examine the affidavits in support of the warrant in a common-sense and realistic manner. *United States v. Dubrofsky,* 581 F.2d 208, 212 (9th Cir. 1978). The conclusions of an agent based on his experience with investigations may be considered. *United States v. Hendershot,* 614 F.2d 648, 654 (9th Cir.1980). We may not reverse a magistrate's decision unless it is clearly erroneous. *United States v. Estrada,* 733 F.2d 683, 684 (9th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 168, 83 L.Ed.2d 103 (1984).

■ In their surveillance of Crozier and his associates, the drug enforcement agents saw evidence that an amphetamine operation was taking place in Crozier's residence. They saw Crozier carry large con-tainers from a chemical supplier to his home and Stein's. On the morning of their arrest, Crozier and Stein carried garbage from Crozier's home to a dump. The agents examined the garbage and found many containers and also chemicals which are used to manufacture amphetamine.

These facts demonstrate that the agents before they entered the Crozier home had probable cause to believe that evidence of drug manufacturing was located there. The agents' entry into the Crozier home pursuant to the warrant issued by the magistrate to seize evidence of the illegal amphetamine operation was proper.

The defendants assert that the Crozier warrant is invalid because it is overbroad and because the agents seized far more than the warrant authorized. The warrant authorized the seizure of "Amphetamine, precursor chemicals including Methylamine, P–2–P, Ether, and Alcohol, and laboratory apparatus, notes, formulas, as well as any indicia of ownership and control of the premises."

■ A warrant must particularly describe the items to be seized and does not leave anything to the discretion of the executing officer. *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927).

We have upheld warrants authorizing the seizure of items which indicate ownership or control of the premises searched. In *United States v. Whitten,* 706 F.2d 1000 (9th Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984), the search warrant for a residence authorized the seizure of "telephone books, diaries, photographs, utility bills, telephone bills, and any other papers indicating the ownership or occupancy of said residence." In *Whitten,* many defendants were suspected of manufacturing amphetamine on the premises searched. We found that it was reasonable to authorize the agents to seize evidence which showed who occupied or controlled the premises. *Id.* at 1009.

■ Here, the drug enforcement agents suspected the defendants of manufacturing

amphetamine. Their observations pointed to the use of Crozier's residence to carry on their amphetamine operations. It was reasonable to authorize the agents to search for evidence of ownership and control of the residence, which Crozier shares with at least one other defendant.

■ A search must be limited to the terms of the warrant. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 394 n. 7, 91 S.Ct. 1999, 2004 n. 7, 29 L.Ed.2d 619 (1971). Here, the agents seized bank statements, personal letters and other papers which are not relevant to this case. Although the items seized may not be within the terms of the warrant, the district court need not suppress all of the evidence seized unless there was a flagrant disregard for the terms of the warrant. Only those items which fall outside the scope of the warrant need be suppressed. *United States v. Whitten, supra*, 706 F.2d at 1010, *citing United States v. Heldt*, 668 F.2d 1238, 1259 (D.C.Cir.1981), *cert. denied*, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982).

■ The agents, in their search for papers indicating ownership and control, might seize irrelevant items such as personal letters and bank statements addressed to the occupant. We do not condone the seizure of items not described in the warrant, but we hold that the agents' violation of the warrant's terms was not flagrant and did not invalidate the seizure of relevant items.

We remand to the district court to identify and suppress only those items which fall outside the scope of the warrant.

### B. The Stein Warrant

The search warrant for the April 9 search of the Stein residence authorized the seizure of "Material evidence of violation 21 USC 841, 846, (Manufacture and Possession with intent to distribute Amphetamine and Conspiracy)."

The affidavit for the warrant specified "Amphetamine, precursor chemicals, including Methylamine, P–2–P, Ether, and Alcohol, laboratory apparatus, notes, formulas, as well as any indicia of ownership and control of the premises." However, the agent when he executed the warrant, did not have the affidavit with him.

The government contends that the omission in the warrant of the specific items to be seized was a mistake and that the agent was familiar with the content of the affidavit and believed that he was bound by its terms.

■ Under the Fourth Amendment, a warrant must particularly describe the items to be seized, and nothing may be left to the discretion of the executing officer. *Marron v. United States, supra*, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927). The search warrant for the Stein residence authorizes a general search for evidence of an amphetamine business. This warrant is overbroad and violates the Fourth Amendment.

Under *United States v. Leon*, —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 *reh'g denied*, —— U.S. ——, 105 S.Ct. 52, 82 L.Ed.2d 942 (1984), evidence seized under a facially-valid warrant later found to be invalid may be admissible if the executing officers act in good faith and in reasonable reliance on the warrant.

Here, the warrant is deficient because it is overbroad and does not describe any particular property. We hold that the agent could not reasonably rely on the warrant.

*Massachusetts v. Sheppard*, —— U.S. ——, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984), the recent Supreme Court decision which the government asserts requires a different result, is not in point. In *Sheppard*, a detective sought a warrant to search for weapons and other evidence of a murder. The only available warrant form was a form for controlled substances. The detective deleted the words "controlled substance" from the affidavit but neglected to delete them from the application. Although the judge assured the detective that the necessary changes in the warrant would be made, the judge failed to make them. The detective took the warrant and searched the defendant's residence.

The Supreme Court upheld the warrant because its invalidity was due to a mere technical error on the part of the issuing judge. *Sheppard*, 104 S.Ct. at 3426. The detective had told the judge that the warrant form needed to be changed, and he was assured by the judge that the necessary changes would be made. *Id.*, 104 S.Ct. at 3429. The Supreme Court concluded that "there was an objectively reasonable basis for the officers' mistaken belief" that the search was authorized by a valid warrant so that suppressing the evidence would not serve any deterrent function. *Id.* at 3429–30.

Here, there was no mere technical error and the agent's conduct was not reasonable. In contrast to the detective in *Sheppard*, he did not take "every step that could reasonably be expected of him." *Id.* at 3429. He relied on a warrant that merely stated "Material evidence of violation 21 USC 841, 846 (Manufacture and Possession with intent to distribute Amphetamine and Conspiracy)." He obtained no specific assurance from the magistrate that the overbroad warrant was acceptable. Although the affidavit was more specific, the agent did not have it when he made the search. Because evidence of his good faith was lacking, the application of the exclusionary rule here may deter the police from relying on overbroad warrants.

We affirm the district court's order suppressing evidence seized from the Stein residence on April 9, 1980. We also affirm the order suppressing evidence seized from the Stein residence on April 11, 1980 because the April 11 search was the fruit of the illegal search on April 9.

## II. *The Restraining Order*

Count Two of the indictment charges Crozier with engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848 (1976). The penalties for violating section 848 include forfeiture of all profits obtained through the criminal enterprise.

The district court granted the government's *ex parte* motion for a restraining order to prevent Crozier from selling, transferring or encumbering almost all of his real and personal property. The order also restrains Wolke from disposing of her property even though she is not a defendant in the continuing criminal enterprise count.

In the earlier proceeding, we held that the district court erred in failing to hold a hearing on the validity of the restraining order. Rule 65 of the Federal Rules of Civil Procedure requires an immediate hearing whenever the court grants a temporary restraining order *ex parte*. We applied Rule 65 because section 848 does not specify when a restraining order should issue.

The Supreme Court called our attention to *United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983), in which the Court approved an eighteen-month delay between the government's seizure of 8,850 dollars and its petition for civil forfeiture of the money.

The defendant in *Eight Thousand Dollars* was indicted for violation of customs laws; there are statutory procedures which the Customs Service follows to effect a forfeiture. Here, section 848 does not contain a procedure for forfeiture. Absent statutory guidance, we apply the Federal Rules of Civil Procedure.

After our decision and the decree of the Supreme Court in *Eight Thousand Dollars*, Congress enacted the Comprehensive Crime Control Act of 1984 (the Act), Pub.L. No. 98–473, 98 Stat. 1976 (1984). The Act adds criminal forfeiture provisions to the Comprehensive Drug Abuse Prevention and Control Act, 21 U.S.C. § 841 *et seq.*, the act under which Crozier was indicted. The Act provides that upon the government's application, the court may enter a restraining order against property which may be subject to forfeiture under federal drug laws. 21 U.S.C. § 853(e). This order may issue when an indictment or information is filed. *Id.* § 853(e)(1)(B).

Third parties who assert an interest in the restrained property are not entitled to intervene in a trial or appeal involving the forfeiture of that property. 21 U.S.C.

§ 853(k). They may request a hearing to adjudicate their interest in the property but only *after* the property has been ordered forfeited. 21 U.S.C. § 853(n)(2). A forfeiture may only be ordered if a defendant is convicted. 21 U.S.C. § 853(a).

The forfeiture provisions are designed "to eliminate the statutory limitations and ambiguities that have frustrated active pursuit of forfeiture by Federal law enforcement agencies." S.Rep. No. 225, 98th Cong., 2d Sess. 192, *reprinted in* 1984 U.S. Code Cong. & Ad.News 3182, 3375. Before the Act was passed, the government before trial was required to establish the merits of its underlying case in order to support the restraining order.

Under the new Act, third parties who are not charged with an offense for which forfeiture is a penalty must await the conviction or acquittal of the defendant before they file proceedings to protect their interest in the forfeited property.

■ Under the United States Constitution,[1] Congress may not enact any law which imposes a punishment for an act that was not punishable at the time it was committed or any law which imposes punishment greater than the punishment prescribed when the act was committed. *Weaver v. Graham*, 450 U.S. 24, 28, 101 S.Ct. 960, 963, 67 L.Ed.2d 17 (1981). Wolke asserts that retroactive application of the Act violates the Constitution's proscription against *ex post facto* laws.

■ An *ex post facto* law requires two elements. First, it must be retrospective. Second, it must disadvantage the offender affected by it. *Id.* at 29, 101 S.Ct. at 964.

■ If the change is merely procedural and does not increase the punishment or change the elements of a crime, it is not an *ex post facto* law. In *Dobbert v. Florida*, 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344, *reh'g denied*, 434 U.S. 882, 98 S.Ct. 246, 54 L.Ed.2d 166 (1977), the Supreme Court upheld the retrospective application of a change in the role of the judge and the jury in imposing the death penalty. The Court noted that the law did not change the "quantum of punishment" but merely altered the methods of imposing the penalty. *Id.* at 293–94, 97 S.Ct. at 2298.

■ This Act does not change the fact of forfeiture as punishment but merely establishes the procedure by which forfeiture will be carried out. Therefore, Wolke will not face any greater punishment as a result of the new law. Retroactive application of the forfeiture provisions does not violate the constitutional prohibition against *ex post facto* laws.

Wolke next asserts that the Act violates her Fifth Amendment right to due process of law and that it is unconstitutional on its face because Congress failed to provide for a hearing on a restraining order before trial or conviction.

■ We agree. We recently pointed out that "[a]dequate, or due, process depends upon the nature of the interest affected." *Haygood v. Younger*, 769 F.2d 1350, 1355 (9th Cir.1985). To determine what process is due, we must balance the risk of an erroneous deprivation, the state's interest in providing specific procedures and the strength of the individual's interest. *Cleveland Board of Education v. Loudermill*, —— U.S. ——, 105 S.Ct. 1487, 1494, 84 L.Ed.2d 494 (1985); *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *Haygood*, 769 F.2d at 1356.

■ Because Wolke and Crozier had significant property interests in the real and personal property seized by the government, due process requires that they be afforded the opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965); *Haygood*, 769 F.2d at 1356. The statutory forfeiture provisions do not satisfy due process. We believe that the absence of any hearing on the imposition of a restraining order on a defendant's property, or a hearing for parties with a third party interest which takes place months or years after a restraining order is issued, cannot be construed as a hearing provided

---

**1.** U.S. Const., art. I, § 9, cl. 3; art. I, § 10, cl. 1.

"at a meaningful time." The risk of an erroneous deprivation under these procedures is high.

Under the Act's forfeiture provisions, neither the defendant nor a third party may challenge a restraining order unless and until the defendant is convicted. This case was filed more than five years ago, and the defendant's trial and appeals may take several years more. If the defendant is acquitted, the validity of the restraining order is moot and parties with an interest in the property may have no remedy for the lengthy and wrongful deprivation of their property.

We hold that the forfeiture provisions of the Comprehensive Crime Control Act do not comply with the due process requirements of the Fifth Amendment to the United States Constitution. More specifically, we find 21 U.S.C. § 853(e)'s provisions for restraining orders or injunctions on the filing of an indictment, and the hearing provisions in 21 U.S.C. § 853(n) for those with third party interests, do not protect the rights of defendants and third parties.

In the absence of valid procedural guidelines, we again hold that Rule 65 of the Federal Rules of Civil Procedure governs the restraining order and that the district court erred in denying without a hearing the motions of Crozier and Wolke to dissolve the restraining order.

### Conclusion

The district court entered an order suppressing all evidence seized under the Crozier and Stein warrants. In an earlier opinion, we affirmed that order except on the issue of suppression against non-resident defendants. We ordered that issue remanded to the district court.

We now vacate our earlier order, and we vacate the district court's order suppressing the evidence seized from the Crozier residence. The district court is directed to hold a hearing to determine which items of evidence seized are described in the Crozier warrant as: "Amphetamine, precursor chemicals including Methylamine, P–2–P, Ether, and Alcohol, and laboratory apparatus, notes, formulas, as well as any indicia of ownership and control of the premises." The government at trial may introduce this evidence. The other evidence shall be suppressed.

The district court's order suppressing evidence seized from the Stein residence is affirmed.

Earlier, we entered an order vacating the order restraining Crozier and Wolke from disposing of their real and personal property. We now vacate that order, and we remand with instructions to the district court to hold a hearing in accordance with Rule 65 of the Federal Rules of Civil Procedure.