**UNITED STATES of America, Plaintiff—Appellee,**

v.

**Phongsoon DEJANU, aka Peter Dejanu, Defendant— Appellant.**

**No. 01–10602.**
**D.C. No. CR–00–00006–WHA.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 17, 2002.

Decided June 12, 2002.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

Before HUG and BERZON, Circuit Judges, and LASNIK\*, District Judge.

## MEMORANDUM \*\*

Phongsoon Dejanu appeals from the denial of a motion for reconsideration. Dejanu's motion asked the district court to reconsider its prior denial of Dejanu's motion to release funds that were seized by the government. Because the facts are

---

\* Honorable Robert S. Lasnik, United States District Judge for the Western District of Washington, sitting by designation.

familiar to the parties, we only repeat them as necessary to explain our reasoning. We review "a district court's denial of a motion for reconsideration for abuse of discretion." *Kona Enter., Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir.2000).

1. One of the district court's grounds for denial was Dejanu's failure to present new evidence. Civil Local Rule 7–9 for the Northern District of California requires that motions for leave to file motions of reconsideration demonstrate the existence of one of three justifications: "1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the court before entry of the interlocutory order for which reconsideration is sought; or 2) The emergence of new material facts or a change of law occurring after the time of such order; or 3) A manifest failure by the court to consider material facts which were presented to the court before such interlocutory order." *See also School District No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993) (setting as a general matter similar requirements for motions to reconsider).

■■■ Dejanu explicitly justified his motion for reconsideration by claiming the emergence of new evidence. Specifically, Dejanu claims that after the initial hearing on probable cause, counsel discovered two new pieces of evidence, both of which called into question Prasert Tangtrongsakdi's credibility: a declaration by Lynn Grano, Prasert's prior attorney, and reports of federal investigators' interviews of Prasert. Invoking those two documents, Dejanu contends he became aware for the first time after the initial hearing that, for the bulk of the civil proceeding, Prasert portrayed himself as the knowing, rightful owner of 1700 California, but that, once Prasert chose to cooperate with the government in its investigation, he changed his story and portrayed himself as an unknowing "straw man" manipulated by Dejanu.

On close examination of the record, including Prasert's testimony at the civil trial, we conclude that the evidence Dejanu claims is new neither changes the factual picture available at the time of the original hearing nor casts new doubt on Prasert's credibility. Prasert told essentially the same story in his declaration before the civil trial, in his testimony at the civil trial, and in his interview with federal investigators. What Dejanu tries to portray as a contradiction is in fact an evolution over time in the partners' conception of their business relationship: Prasert's consistent story was that Dejanu's initial vision was for him, Dejanu, to be the owner of the building and to simply lean on his friend Prasert for financial support in purchasing it. Over the course of planning the transaction, that vision changed, at least in Prasert's mind, so that Prasert became the initial and official owner and Dejanu became the manager. If things went as planned—if, for example, the loan was properly repaid Dejanu would become 90% owner. Prasert's declaration tells of this evolution in two short paragraphs (of which Dejanu quotes to us only the second half of paragraph 6); Prasert's testimony at trial reconstructed essentially the same evolution over scores of specific questions.

Moreover, the trial testimony to which Grano's declaration refers and which Dejanu claims contradicts Prasert's earlier declaration was available at the time of the original motion. In fact, an excerpt of that testimony that describes Dejanu as masterminding the deal by, for example, filling out the credit application for Prasert to sign was included as an exhibit in the government's response to Dejanu's original motion to release funds. The district court was also correct, then, in finding that

any alleged inconsistencies "were either known or knowable" as of the hearing held on December 15, 2000.

The lack of new evidence was itself sufficient ground for denying Dejanu's motion for reconsideration.

2. Even if we were to review the district court's other reasons for denying the motion for reconsideration, we would not find an abuse of discretion.

■ Dejanu contends that the district court misunderstood its procedural responsibility. "[I]n order for a restraining order under § 853 [1] to be constitutional, the district court must hold a hearing under [Fed.R.Civ.P.] 65 to determine whether probable cause exists to issue an injunction." *United States v. Roth,* 912 F.2d 1131, 1133.

In proving probable cause, "[t]he prosecution must ... produce sufficient evidence to permit the District Court to independently assess whether the burden has been met; it may not rely simply upon the indictment and its own assessment of the strength of its case." *United States v. Spilotro,* 680 F.2d 612, 618 (9th Cir.1982). *See also United States v. Long,* 654 F.3d 911, 915 (3d Cir.1981) ("Before a court can issue such a restraining order ... the government must demonstrate that it is likely to convince a jury, beyond a reasonable doubt, of two things: one, that the defendant is guilty of violating the Continuing Criminal Enterprise statute and two, that the profits or properties at issue are subject to forfeiture under the provisions of section 848(a)(2)").[2] Thus, the district court in this case did misstate its procedural responsibility at one point in the hearing: "What I have to find is that there is probable cause to believe that the money in question is the fruits of a fraudulent scheme that the grand jury has already found probable cause for, and certainly that exists here. That fund of money is the fruits of a scheme to defraud that bank."

The district court went on, however, to find, in the alternative, probable cause to believe Dejanu had committed the crimes with which he was charged, so the misstatement of law does not matter. Moreover, as we have already decided, the denial of the motion to reconsider is justified in any event on the district court's ground that there was no new material evidence; the district court's legal error is immaterial for that reason as well.

■ 3. The government obtained a Third Superseding Indictment in this case on April 9, 2002. Dejanu argues that we must remand because the change in the

---

1. Although the sentence quoted above references § 853 specifically, *Roth* states in more general terms that "a pre-trial order restraining assets ... is a preliminary injunction for procedural purposes...." *Roth,* 912 F.2d at 1133, *citing United States v. Crozier,* 777 F.2d 1376, 1382 (9th Cir.1985). Preliminary injunctions are governed by Fed.R.Civ.P. 65, and Rule 65 requires a hearing.

2. *Spilotro* cited *United States v. Crozier,* 674 F.2d 1293 (9th Cir.1982) ("*Crozier I*"), which similarly rejected the government's contention that "because a seizure under Section 848 must be initiated by a grand jury," procedural safeguards that accompany seizure of property in civil cases do not apply to criminal cases. *Crozier I,* 674 F.2d at 1297. *Crozier I* was vacated and remanded by the Supreme Court on other grounds (concerning the timing of the hearing), but its holding regarding the procedural requirements for pre-forfeiture seizures of property was reaffirmed by *United States v. Crozier,* 777 F.2d 1376, 1383 (9th Cir.1985) ("*Crozier II*"). *Roth,* in turn, reaffirmed the procedural requirements set forth in *Crozier II* as consistent with *United States v. Monsanto,* 491 U.S. 600, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989). *See Roth,* 912 F.2d at 1133.

new indictment invalidates the district court's denial of his motion. The new indictment was not considered by the district court and is therefore not properly before us. Dejanu is not barred from bringing another motion in district court to release funds based on the new, limited indictment.

4. Dejanu also contends that it was error for the district judge not to hold an evidentiary hearing. On his motion for reconsideration, Dejanu would need to show some *new* basis for a hearing. Dejanu rests his argument for a hearing on what he calls the newly revealed contradiction in Prasert's testimony. Because this attempt to question Prasert's credibility is unsuccessful for reasons already surveyed, the district court did not err in denying an evidentiary hearing on the motion for reconsideration.

█ 5. Dejanu argues, finally, that equitable "clean hands" principles should bar the seizure because of Prasert's alleged perjury. Prasert's bad acts, if there were any, would not render the government's hands "dirty". The government, not Prasert, is Dejanu's opposing party in this case.

AFFIRMED.