**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

LIQUIDATORS APPOINTED BY THE
HIGH COURT OF ANTIGUA FOR
EUROFED BANK, LTD.,
*Claimants-Appellants,*

v.

PAVEL IVANOVICH LAZARENKO,
Pavlo Ivanovych Lazarenko,
*Defendant-Appellee.*

No. 06-10273

D.C. No.
CR-00-00284-MJJ

ORDER
AMENDING
OPINION AND ON
PETITIONS FOR
REHEARING AND
AMENDED
OPINION

Appeal from the United States District Court
for the Northern District of California
Martin J. Jenkins, District Judge, Presiding

Argued and Submitted
October 18, 2006—San Francisco, California

Filed November 21, 2006
Amended February 7, 2007

Before: Sandra Day O'Connor, Associate Justice,* and
Susan P. Graber and Richard C. Tallman, Circuit Judges.

Opinion by Judge Tallman

---

*The Honorable Sandra Day O'Connor, Associate Justice of the United
States Supreme Court (Ret.), sitting by designation pursuant to 28 U.S.C.
§ 294(a).

## COUNSEL

Rory K. Little (argued), Gordon A. Greenberg, Matthew J. Jacobs, and Peter J. Drobac, McDermott Will & Emery LLP, Palo Alto, California, for the claimants-appellants.

Hartley West (argued) and Patricia J. Kenney, Assistant United States Attorneys, San Francisco, California, for the plaintiff-appellee.

## ORDER

The Court rules on the pending petitions for rehearing and Liquidators' request to be heard as follows:

(1)  The United States' request to amend the opinion is granted in part and denied in part. The opinion filed November 21, 2006, slip opinion 18657, and reported at 469 F.3d 815 (9th Cir. 2006), is hereby amended as follows:

At slip opinion 18666, starting at line 2 (469 F.3d at 820), modify the first full sentence to state: "Section 982(b)(1) incorporates the standards and procedures, other than subsection (d), for forfeiting property under the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 853."

At slip opinion 18666, beginning at the second paragraph (469 F.3d at 820), delete: "Property of a person convicted of violating 18 U.S.C. § 1956 is presumed subject to forfeiture if the United States establishes by a preponderance of the evidence that (1) the defendant acquired the property during the period he violated 18 U.S.C. § 1956 or within a reasonable time thereafter, and (2) no likely legitimate source exists for the property other than that traceable to the violation itself. 21 U.S.C. § 853(d). The trier of fact may decline to apply the rebuttable presumption if not merited under the facts of the case or if the defendant produces evidence that casts doubt on its validity. *See* S. REP. NO. 98-225, at 212."

With these amendments, the panel has voted to deny the United States' petition for rehearing. The panel has also voted to deny the Liquidators' petition for rehearing, with suggestion for rehearing en banc. The full court has been advised of Liquidators' petition for rehearing en banc and no judge of the court has requested a vote on it. The petitions are DENIED, and no further petitions for rehearing may be filed.

(2) The panel also denies Liquidators' "Request to be Heard in Response to the United States' Petition for Rehearing or For Clarification."

---

**OPINION**

TALLMAN, Circuit Judge:

This unusual appeal follows the government's seizure of approximately $2.5 million in assets from former Ukrainian Prime Minister Pavel Ivanovich Lazarenko ("Lazarenko"). A jury in the United States District Court for the Northern District of California convicted Lazarenko on several counts of money laundering in violation of 18 U.S.C. § 1956. The United States contends that it seized the funds and bonds law-

fully under criminal forfeiture law. *See* 18 U.S.C. § 982(a)(1); 21 U.S.C. § 853. Lazarenko has been sentenced, but has not yet appealed his conviction. The United States maintains that Lazarenko and a business associate purchased a majority share of an off-shore bank, European Federal Credit Bank ("Eurofed"), to launder the proceeds of illegal activity. Lazarenko and others would deposit the money in a San Francisco bank, which had a correspondent relationship with the off-shore Eurofed bank in Antigua. Third-party claimants include two PricewaterhouseCoopers partners appointed as Liquidators of Eurofed ("Liquidators"). They contend that they own the forfeited funds and bonds pursuant to an order from the High Court of Antigua appointing them to collect and distribute the bank's assets to depositors and creditors.

Liquidators seek interlocutory appeal from two orders arising from the United States' efforts to seize the funds and bonds: (1) an order denying Liquidators' motion to set an immediate hearing on their earlier filed "Motion for Return of Illegally Seized Funds" ("seizure motion"), and (2) a preliminary order of forfeiture the district court entered after Lazarenko's guilty verdict. Liquidators challenge both orders on numerous grounds. We must first determine, however, whether Liquidators have standing to invoke the jurisdiction of this Court before the district court concludes ancillary proceedings. We hold that they do not. We further conclude that the controversy is not yet ripe for judicial review. We therefore dismiss this appeal for lack of appellate jurisdiction.

I

In July 2001, a federal grand jury for the Northern District of California returned a second superseding indictment charging Lazarenko with conspiracy to commit money laundering (count 1), 18 U.S.C. § 1956(h); money laundering (counts 2-5 and 6-8), *id.* § 1956; wire fraud (counts 9-30), *id.* § 1343; and transportation of stolen property (counts 31-53), *id.* § 2314.

A conviction under 18 U.S.C. § 1956 subjects a defendant to forfeiture of any property, real or personal, involved in or traceable to the offense. *Id.* § 982(a)(1). Accordingly, the indictment included a criminal forfeiture allegation under 18 U.S.C. § 982(a)(1). The indictment advised Lazarenko that, as a result of Counts 1-8, the United States would seek forfeiture of all property connected to his money laundering offenses, including, but not limited to, specified assets.

On June 3, 2004, a petit jury convicted Lazarenko of conspiracy to commit money laundering (count 1), several counts of money laundering (counts 2-8), wire fraud (counts 20-29), and transportation of stolen property (counts 31 and 43-52). The jury found that Lazarenko conspired to launder and laundered the proceeds of specified unlawful activity—foreign extortion, wire fraud, and transportation of stolen property. He did so through various banks in the United States, Switzerland, Antigua, and elsewhere. Lazarenko waived a jury determination on special findings related to the forfeiture allegations and proceeded to trial on the substantive criminal counts of the indictment. Following Lazarenko's conviction, but before the district court sentenced Lazarenko, the government initiated separate civil forfeiture proceedings by filing a complaint against the res, No. C 05-946 MJJ. The Clerk of Court for the Northern District of California reassigned the civil action to the Honorable Martin J. Jenkins, as related to the underlying criminal action already pending before Judge Jenkins, No. CR 00-0284 MJJ.

In January 2005, the government obtained a civil seizure warrant for the assets at issue here—U.S. $2.5 million in funds and Ukrainian bonds on deposit with Bank of America. The funds and bonds comprise two accounts containing $1,379,879 and $327,544.09, respectively, and an account containing 923,000 Ukrainian bonds. The government filed its civil complaint against the funds and bonds under 18 U.S.C. § 981 in March 2005. Liquidators answered because the complaint named assets held in the name of Eurofed as defendant.

In September 2005, Liquidators moved for summary judgment. The district court granted that motion and dismissed the civil forfeiture action on October 26, 2005, as barred by the applicable statute of limitation, 19 U.S.C. § 1621. That same day, the government obtained a criminal seizure warrant for the same res under 21 U.S.C. § 853(f).

Liquidators contend the seized funds and bonds belong to Eurofed because, in December 1999, the High Court of Antigua appointed Liquidators to collect and distribute Eurofed's assets to its depositors and creditors (who include Lazarenko and his associates). As a result, in January 2006, Liquidators moved the district court to vacate the criminal seizure warrant and immediately return the funds and bonds to the Antiguan liquidation proceedings, so they may distribute the funds and bonds as directed by the Antiguan High Court. Liquidators challenge the United States' probable cause to seize the assets, and they invoke the doctrines of res judicata, the statute of limitation, the act of state doctrine, and Eurofed's superior claim to ownership as grounds to vacate the seizure warrant. In March 2006, Liquidators applied ex parte to Judge Jenkins for an immediate hearing on their motion for return of the illegally seized funds. N.D. Cal. Crim. R. 47-1 & 47-3. Liquidators claimed that *United States v. Crozier*, 777 F.2d 1376 (9th Cir. 1985), afforded them the right to a constitutionally mandated and immediate hearing. They reasoned that waiting to commence the ancillary proceedings contemplated by 21 U.S.C. § 853(n) until the district court sentenced Lazarenko would not sufficiently protect their due process rights to a reasonably prompt opportunity to contest the seized property to which they claim ownership. Liquidators press these same arguments on appeal.

After holding a telephonic conference with all interested parties, the district court denied Liquidators' ex parte application. The district court found that setting a hearing on Liquidators' motion after sentencing Lazarenko comported with due process, as Congress has provided for ancillary proceed-

ings on the heels of a sentence imposed upon conviction of a particular crime, 21 U.S.C. § 853(n). Soon thereafter, the district court granted the United States' application for a preliminary order of forfeiture under 18 U.S.C. § 982(a)(1) and Federal Rule of Criminal Procedure 32.2(b). Liquidators now seek to appeal both orders and seek a writ of mandamus compelling the district court to order the United States to return the assets to Liquidators immediately.

On May 24, 2006, Liquidators filed a provisional and precautionary petition with Judge Jenkins to adjudicate Liquidators' interest in the funds and bonds. The parties inform us that Judge Jenkins has taken that application under advisement and awaits action from this court before deciding whether to proceed with the ancillary proceedings. During the pendency of this appeal, on August 25, 2006, the district court sentenced Lazarenko, and on September 29, 2006, Judge Jenkins entered a final order of forfeiture against Lazarenko. The district court has scheduled a status conference to address whether the district court should stay further ancillary proceedings until we resolve Liquidators' appeal.

II

Liquidators essentially challenge the entire process Congress prescribed for third parties to adjudicate their interest in property subject to forfeiture. Without reaching the merits of this claim, we must first review criminal forfeiture as crafted by Congress because it impacts our standing analysis.

Courts impose criminal forfeiture as punishment following conviction of a substantive criminal offense. *Libretti v. United States*, 516 U.S. 29, 39 (1995). Criminal forfeiture operates *in personam* against a defendant to divest him of his title to proceeds from his unlawful activity as a consequence of his criminal conviction. *United States v. Nava*, 404 F.3d 1119, 1124 (9th Cir. 2005). Title 18 U.S.C. § 982(a)(1) directs a court to order forfeiture as an additional sanction when sentencing a

person convicted of violating 18 U.S.C. § 1956. *United States v. Bajakajian*, 524 U.S. 321, 328 (1998). Section 982(b)(1) incorporates the standards and procedures, other than subsection (d), for forfeiting property under the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 853.

A court may not enter judgment of forfeiture in a criminal proceeding unless the indictment notifies the defendant that the government seeks criminal forfeiture in accordance with the applicable statute. Fed. R. Crim. P. 7(c)(2); Fed. R. Crim. P. 32.2(a). Criminal forfeiture reaches any property involved in the offense or any property traceable as proceeds to it. 18 U.S.C. § 982(a)(1). Forfeiture relates back to the time of the criminal acts giving rise to the forfeiture. 21 U.S.C. § 853(c). In other words, the United States' interest in the property vests at the time the defendant commits the crime. *Id.* Otherwise, a defendant could attempt to avoid criminal forfeiture by transferring his property to another party before conviction. *See* S. REP. NO. 98-225, at 212 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3383-84, 3394.

**[1]** Upon a finding that the property involved is subject to forfeiture, a court must promptly enter a preliminary order of forfeiture without regard to a third party's interests in the property. *See* Fed. R. Crim. P. 32.2(b)(2); *see also United States v. Monsanto*, 491 U.S. 600, 607 (1989) ("Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied, or broader words to define the scope of what was to be forfeited."). A preliminary order of forfeiture becomes final at sentencing. Fed. R. Crim. P. 32.2(b)(3).

**[2]** Section 853(n) provides the process for vindicating a third party's interests in forfeited property. The law appears settled that an ancillary proceeding constitutes the only avenue for a third party claiming an interest in seized property. *See Libretti*, 516 U.S. at 44 (noting that Congress has deter-

mined that § 853(n) provides the means to vindicate third-party rights); *Nava*, 404 F.3d at 1125 ("We have held that third parties must await the defendant's conviction before filing proceedings to protect their interest in the property and must await the court's order of forfeiture before requesting an ancillary hearing." (citing *Crozier*, 777 F.2d at 1382-83)).

**[3]** A third party claiming an interest in property subject to forfeiture may not intervene in a trial or appeal of a criminal case involving the forfeiture. 21 U.S.C. § 853(k)(1). Nor may a third party commence an action at law or equity against the United States concerning the validity of the alleged interest after the United States files an indictment with a forfeiture allegation. *Id.* § 853(k)(2). Rather, a court adjudicates a third party's interest in the forfeited property in an ancillary proceeding after concluding the criminal case and entering a preliminary order of forfeiture. Fed. R. Crim. P. 32.2(b) advisory committee's note.

After a court enters the forfeiture order, the United States must notify the public. 21 U.S.C. § 853(n)(1). Within thirty days after the United States publishes final notice or a third party receives notice, whichever is earlier, the third party must petition the court for a hearing to adjudicate the validity of its alleged interest in the property. *Id.* § 853(n)(2). To the extent practicable, the court must hold the ancillary proceeding within thirty days of the petition. *Id.* § 853(n)(4). At the ancillary proceeding, third-party petitioners may present evidence and witnesses on their own behalf, and they may cross-examine witnesses who appear at the hearing. *Id.* § 853(n)(5). Upon determining that a petitioner establishes by a preponderance of the evidence that he (1) had a vested or superior right, title, or interest in the property when the defendant committed the acts giving rise to the forfeiture, or (2) is a bonafide purchaser for value of the right, title, or interest in the property and at the time of the purchase was reasonably without cause to believe the property was subject to forfeiture, the court

must amend the order of forfeiture to accommodate that interest. *Id.* § 853(n)(6).

## III

Liquidators insist the Court must order the United States immediately to return the funds and bonds to Liquidators and deem the seizure and attempted forfeiture improper, given the district court's delay in hearing Liquidators' claims. Liquidators contend that the district court unlawfully entered the preliminary order of forfeiture because (1) the government sought criminal forfeiture beyond the limitation period, (2) res judicata bars the criminal forfeiture, (3) the criminal seizure violates the act of state doctrine, and (4) the forfeiture improperly extends to property Liquidators own. Liquidators further contend the district court's order denying them an immediate hearing violates their right to due process under the Fifth Amendment.

Liquidators also assert appellate jurisdiction over the preliminary order of forfeiture under 28 U.S.C. § 1292(a)(1). Liquidators assert appellate jurisdiction over the order denying them an immediate hearing under the collateral order doctrine. We reach neither our jurisdiction over these orders nor the merits of Liquidators' claims because Liquidators' challenge presents an insurmountable threshold issue of justiciability.

## A

We must always examine our own jurisdiction before deciding the merits of a dispute. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180 (2000); *Friery v. L.A. Unified Sch. Dist.*, 448 F.3d 1146, 1148 (9th Cir. 2006). The Constitution's case-or-controversy limitation on federal judicial authority is the lynchpin for standing and ripeness jurisprudence. *Friends of the Earth, Inc.*, 528 U.S. at 180. The standing doctrine determines "whether the litigant is

entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "[C]oncern[s] about the proper—and properly limited—role of the courts in a democratic society" underlie the standing doctrine. *Id.* The ripeness doctrine prevents courts from deciding cases prematurely. *Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 807 (2003).

Both standing and ripeness jurisprudence include a constitutional component, rooted in the Constitution's case-or-controversy requirement, and a prudential component, which embraces judicially self-imposed restraints on federal jurisdiction. *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004); *Nat'l Park Hospitality Ass'n*, 538 U.S. at 808. A litigant must satisfy both to seek redress in federal court. *Nuclear Info. & Res. Serv. v. Nuclear Regulatory Comm'n*, 457 F.3d 941, 949-50 (9th Cir. 2006).

**[4]** Persons seeking appellate review, like those who appear in courts of first instance, must satisfy Article III standing. *Arizonians for Official English v. Arizona*, 520 U.S. 43, 64 (1997). To establish Article III standing, a litigant must show that the allegedly unlawful conduct caused him to suffer an actual or imminent injury—not a hypothetical, conjectural, or abstract injury—that a favorable decision would likely redress. *Elk Grove Unified Sch. Dist.*, 542 U.S. at 12; *Allen v. Wright*, 468 U.S. 737, 751 (1984). Courts often treat the constitutional component of ripeness under the rubric of standing; indeed, "in many cases, ripeness coincides squarely with standing's injury in fact prong." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc). This statement rings true here.

**[5]** A litigant must also meet non-constitutional or prudential requirements to invoke federal jurisdiction. Prudential standing encompasses "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed

in representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Allen*, 468 U.S. at 751. The prudential component of the ripeness requirement focuses on the adequacy of the record to ensure effective review. *Portman v. County of Santa Clara*, 995 F.2d 898, 903 (9th Cir. 1993).

B

We first address the injury requirement for Article III standing and ripeness, which ultimately sounds the death knell for Liquidators' interlocutory appeal. Liquidators claim two injuries: (1) unlawful restraint on the assets seized from their bank accounts, and (2) denial of an immediate hearing after the government seized their property. Both, according to Liquidators, constitute an "injury" sufficient to satisfy Article III standing. We disagree.

[6] Neither constitutes a legally cognizable injury in light of the statutory scheme specifying the process accorded to Liquidators in connection with a criminal forfeiture. Section 853(n) provides Liquidators an adequate opportunity to protect their claimed interest in the funds and bonds in an ancillary proceeding where they may present evidence, offer witnesses, and cross-examine witnesses who appear at the hearing. 21 U.S.C. § 853(n)(5). Although the government seized the funds and bonds from accounts Liquidators control, whether the seizure actually injures Liquidators is conjectural or hypothetical because it depends on the district court's findings on who possesses superior title to the res under § 853(n)(6). If the district court determines that Liquidators have a superior legal right, title, or interest in the property, the court must amend the order of forfeiture to divest the United States' interest in the forfeited property. *Id.* § 853(n)(6). Moreover, as government counsel conceded at oral argument, Liquidators may obtain pre-judgment accrued interest in the amount the government actually earned while wrongfully

holding the money.[1] The district court shall bind the government accordingly if it ultimately rules in Liquidators' favor.

Liquidators present no reason why the ancillary proceeding would inadequately protect their interest in adjudicating their competing claim to the property. In the proceedings that we understand the district court will promptly commence below, Liquidators may present all arguments and defenses to defeat the government's forfeiture, including those raised in their seizure motion and on appeal.[2] We express no opinion on the merits of those arguments, and the district court may freely apply the law to the facts as it finds them during the ancillary proceedings. The district court deferred hearing Liquidators' motion for return of the seized funds until the ancillary proceeding and at no time held that it would not consider the arguments raised in their seizure motion.

[7] At oral argument, Liquidators' counsel attributed the inadequacy of the ancillary proceeding to the delay between the government's seizure and the hearing on their claims. Relying on *Crozier*, Liquidators contend that allowing the government's seizure without holding a prompt hearing violates Liquidators' constitutional right to due process. Specifically, they argue that a delay of "sixteen months" denies them due process. The parties dispute the amount of the delay. Liq-

---

[1] Counsel for the United States stated at oral argument after conferring with the Asset Forfeiture Unit of the United States Department of Justice, Criminal Division, that she was authorized to concede Liquidators' right to collect pre-judgment accrued interest if they should prevail on the merits of their claim. We accept that concession and direct that the district court shall impose pre-judgment accrued interest on remand if it ultimately rules in Liquidators' favor after concluding the ancillary proceedings. Interest shall run from the date of the initial civil seizure.

[2] To clarify, these include whether: (1) the government seized the funds outside the limitation period, (2) res judicata bars the criminal seizure, (3) the criminal seizure violates the act of state doctrine, (4) the affidavits submitted to support the government's seizure lack probable cause, and (5) the criminal forfeiture improperly extends to assets Liquidators own.

uidators calculate the delay from January 2005, when the government seized the funds civilly, whereas the government calculates the period of delay from its criminal seizure in October 2005. Regardless, Liquidators fail to demonstrate that the delay actually injured them. Although an unreasonable delay could invoke due process concerns, a point evident from *Crozier*, we hold that the delay here is not of such magnitude that it violates the Constitution because the period of delay differs from the period in *Crozier* by a matter of years. We caution, however, that an inordinate delay beyond that presented here could deprive constitutional rights to prompt due process notice and hearing. We leave for another day the articulation of when such a violation could occur.

**[8]** In *Crozier*, we considered due process concerns in a case filed more than five years earlier, with a pre-trial restraining order issued years earlier, and where the defendants' trial and appeals could delay ancillary proceedings for several more years. *Crozier*, 777 F.2d at 1384. Here, in contrast, the district court has already sentenced Lazarenko and stands by, awaiting the results of Liquidators' appeal to initiate ancillary proceedings. We see no reason to delay those proceedings from going forward. Should Liquidators be dissatisfied with the results, they may raise all issues that they now press on subsequent appeal from an adverse final judgment at the close of those proceedings.

**[9]** In sum, Liquidators fail to identify a concrete and imminent injury where, as soon as our mandate issues, they may adequately seek to perfect their claimed superior interests in the funds and bonds in the ancillary proceeding. Given the relatively short delay compared to *Crozier*, and Liquidators' failure to adduce sufficient evidence in the record establishing a particularized injury that the district court cannot adequately redress below, we hold that Liquidators currently fail to satisfy the constitutional requirements of standing and ripeness.

C

Even were we to conclude that Liquidators satisfy the constitutional component of standing and ripeness, we would still dismiss because this case raises prudential concerns under standing and ripeness jurisprudence.

1

**[10]** Although Liquidators raise their own legal rights, not those of a third party, this appeal offends one prudential standing principle. Namely, courts refrain from adjudicating " 'abstract questions of wide public significance' which amount to 'generalized grievances,' pervasively shared and most appropriately addressed in the representative branches." *Valley Forge Christian Coll. v. Am. United for Separation of Church & State, Inc.*, 454 U.S. 464, 475 (1982) (quoting *Warth*, 422 U.S. at 499-500). A generalized harm shared in substantially equal measure by all or a large class of citizens does not by itself warrant exercise of jurisdiction. *Warth*, 422 U.S. at 499.

**[11]** Liquidators raise a generalized grievance about the statutory scheme governing criminal forfeiture. Liquidators claim not that the district court violated 21 U.S.C. § 853, but that the statute Congress enacted violates due process and fails to adequately protect third-party interests because it takes too long to address their claims. Any third-party claimant could attack § 853(n) on due process grounds where a district court defers hearing on third-party claims ancillary to sentencing. This poses a problem because, until the district court in the criminal case determines what property may be forfeited, the district court cannot determine practically who possesses superior title—the United States under the "relation back" provision, 21 U.S.C. § 853(c), or a third-party claimant who meets the statutory standards, *id.* § 853(n)(6). Moreover, affording third parties standing under the circumstances here, before a district court holds an ancillary proceeding, would

shun the procedures Congress deliberately enacted to vindicate third-party claims. Accordingly, Liquidators cannot establish prudential standing. *See Smelt v. County of Orange*, 447 F.3d 673, 684-85 (9th Cir. 2006) (holding that same-sex couple lacked standing to challenge the federal Defense of Marriage Act's definition of marriage because every taxpayer and citizen in the country could theoretically challenge the definition for not including some favored group), *cert. denied.*, 75 U.S.L.W. 3195 (U.S. Oct. 10, 2006) (No. 06-5742).

2

**[12]** Nor do Liquidators meet the prudential component of the ripeness doctrine. We determine if a case is ripe for review by evaluating whether (1) the issues are fit for judicial decision, and (2) the parties will suffer hardship if we withhold decision. *Nat'l Park Hospitality Ass'n*, 538 U.S. at 808.

**[13]** For the first prong, we evaluate "whether the controversy generated is essentially legal in nature or whether further factual amplification is necessary." *W. Oil & Gas Ass'n v. Sonoma County*, 905 F.2d 1287, 1291 (9th Cir. 1990). Liquidators' appeal involves issues not entirely developed in the record before us. The district court deferred the ancillary proceeding until after Lazarenko's sentencing. At the ancillary proceeding, Liquidators and the government may introduce evidence and witnesses, and the district court must consider relevant portions of the criminal record. 21 U.S.C. § 853(n)(5). Whether Liquidators possess a superior interest under § 853(n)(6) requires further factual development. *Thomas*, 220 F.3d at 1142. Liquidators may indeed establish a superior claim to the funds and bonds. In addition, at oral argument, Liquidators' counsel challenged the government's probable cause to seize the funds and bonds, particularly alleging that they were traceable only to counts the district court dismissed at trial. Liquidators may well be able to develop facts showing the government lacked probable cause

on those counts and the assets linked to them. At this point, however, unresolved factual issues make Liquidators' action unfit for our review. *W. Oil & Gas Ass'n*, 905 F.2d at 1291.

**[14]** Turning to the second consideration, Liquidators fail to persuade us that postponing review imposes a "direct and immediate hardship" on them. *Chavez v. Director*, 961 F.2d 1409, 1415 (9th Cir. 1992). Without evidence in the record and without supporting facts, Liquidators conclude that the "rulings are 'ripe' and have a demonstrable 'adverse effect' on the Liquidators' interests." Liquidators' ability to adjudicate their claims following our mandate undermines their claims of hardship. These conclusory claims of hardship simply fail to satisfy Liquidators' burden of proving ripeness. *Pettis ex rel. United States v. Morrison-Knudsen Co.*, 577 F.2d 668, 674 (9th Cir. 1978). Resolving this appeal and issuing our mandate returning jurisdiction to the district court to commence ancillary proceedings constitutes the only impediment to promptly adjudicating unresolved legal and factual issues surrounding Liquidators' entitlement to the res. If the district court ultimately determines the funds were wrongfully seized, an award of pre-judgment accrued interest, along with the return of the res, will redress the damage.

## IV

We hold that Liquidators may adequately protect their interest in the funds and bonds in the ancillary proceeding under § 853(n). Congress designated no other means for third parties to vindicate their interest in forfeited property. Because Liquidators may present all legal arguments that might bar the government's forfeiture in the proceedings below, and because the district court is prepared to undertake the ancillary proceedings promptly, we further hold that Liquidators fail to satisfy the constitutional and prudential components of standing and ripeness. Accordingly, we dismiss this appeal for lack of jurisdiction.

DISMISSED.